[No. D051144. Fourth Dist., Div. One. May 12, 2008.]

THOMAS C. EVANS, Plaintiff and Respondent, v.
LINDA A. EVANS, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of Discussion, part II.

1160

## COUNSEL

Linda A. Evans, in pro. per., for Defendant and Appellant.

Harrison Patterson & O'Connor and Harry W. Harrison for Plaintiff and Respondent.

## OPINION

**HALLER, J.**—Thomas C. Evans (Thomas), a deputy sheriff, sued his former wife, Linda A. Evans (Linda), and Linda's mother, alleging numerous causes of action, including harassment, defamation, and breach of privacy. The court then granted Thomas's motion for preliminary injunction, and entered an order enjoining Linda and her mother from (1) publishing "false and defamatory statements" about Thomas on the Internet; (2) publishing "confidential personal information" about Thomas on the Internet; and (3) contacting Thomas's employer (the San Diego County Sheriff's Department (Sheriff's Department)) "regarding [Thomas]" except to call "911 to report criminal conduct."

Linda appeals from the order, raising numerous contentions. We conclude the preliminary injunction was overbroad and constituted an invalid prior restraint before trial. We thus reverse the order and remand for further hearing.

Our reversal should not be interpreted to mean that a court lacks authority to enjoin certain speech and/or conduct. Before trial and upon a proper showing, a court may prohibit a party from having contact with certain persons or from disclosing certain specified private information under narrowly drawn circumstances. The order here, however, was not sufficiently

tailored to satisfy constitutional standards. Likewise, after a trial, a court may continue these prohibitions and may additionally prohibit a party from repeating statements determined at trial to be defamatory. We reverse and remand for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL SUMMARY[1]

Thomas is a law enforcement officer with the Sheriff's Department. He and Linda were married in 1985, and separated in 1998. In 2002, the court entered a judgment dissolving the marriage. During the next five years, the parties had substantial ongoing conflict over custody, child support and other issues. The family court has held numerous hearings, and those hearings continue through the present time.

In March 2007, Thomas filed a complaint against Linda, alleging harassment (Code Civ. Proc., § 527.6), slander and defamation, various common law torts, breach of privacy claims, and breach of contract. The gist of the allegations was that Linda has engaged in a series of acts intended to harass Thomas and cause him severe emotional stress and injury to his reputation and career. The complaint sought damages and equitable relief.

Shortly after, Thomas moved for a temporary restraining order and preliminary injunction, seeking an order enjoining Linda "from engaging in the slanderous and harassing conduct against" him. In support, Thomas relied primarily on his own declarations in which he asserted (1) Linda had filed "false" internal affairs complaints against him with the Sheriff's Department and other government agencies; and (2) Linda and her mother (Preddy) had placed defamatory information about him on the Internet.

With respect to the internal affairs complaints, Thomas said that in April 2005, Linda filed a complaint with the Sheriff's Department, alleging "a number of departmental and state law violations," including "child abuse, lying, falsifying departmental reports, [and] abuse of position . . . ." After a criminal and internal investigation, these allegations were found to be unsubstantiated and/or unfounded. Twenty months later, in December 2006, Thomas "was informed by [his] superiors . . . that the District Attorney and Sheriff had both received letters about [Thomas] that were very defaming in nature." Thomas did not say who wrote these letters, but in a supplemental

---

[1] Although Linda purports to appeal on behalf of herself and her mother (Shirley Preddy), Preddy did not separately file a notice of appeal and Linda, who is not an attorney, cannot represent another party in the action. In any event, Thomas has now dismissed Preddy from the action. We thus consider the issues only as they relate to Linda.

declaration, Thomas said information about these letters would be "fleshed out through discovery" in the action. Thomas also stated that in March 2007, Linda filed another "harassing request" to the Sheriff's Department. In support of this latter claim, Thomas submitted information reflecting that he had told Linda that a " 'Three time convicted Felon' " has been allowed to view the Evans family court file, and that Linda had written to the court and to the Sheriff's Department expressing a concern as to the source of this information. (Boldface omitted.)

Thomas said he "believe[d]" these prior communications with the Sheriff's Department were "a major factor" in his "inability to [be] promote[d] within the Department." Thomas also asserted that the "embarrassment" resulting from Linda's conduct caused him to decide to "seek a less prominent job within the Department," and that Linda's complaints "will hinder my ability to conduct my duties and may bring negative light to the department and assignment."

With respect to the Internet postings, Thomas stated that: "In December 2006, I was informed that there were internet websites posted by [Linda and Preddy] with numerous defaming comments and statements about me as a sworn law enforcement officer, and the lawyers, judges, and counselors involved in our family court case." Thomas also said he "discovered in December 2006 and January 2007 that [Preddy] had apparently inappropriately gained access to both my family court medical records and financial records, and had published information from them on the internet." Thomas attached a copy of Web site pages showing statements that appeared to have been made by Preddy in a family court declaration, accusing Thomas of physical abuse and harassment against Linda. Thomas did not submit any evidence that any private medical or financial information or identifying informational facts had been published on the Internet.

Thomas also submitted copies of Web site pages in which it appeared that Linda posted statements accusing Thomas of physical abuse against her and her son, and statements suggesting that several San Diego Superior Court judges were biased and/or "incompetent." Thomas further proffered a series of e-mails between Linda and a Web site host, in which Linda was requesting that the host remove her declaration from the site, but the host was refusing to do so. Thomas also stated "[a]s recently as February 19, 2007, a Google search of my name on thepetitionsite.com generated a blurb posted by [Linda] stating the following: 'Our eldest son was returned to my "Primary Care" after his father, San Diego County Sheriff's Sergeant, Thomas C.

Evans, struck him with a belt repeatedly. . . .' This statement is entirely false and reflective of the defamatory and harassing comments published by the defendants."

Based on these submissions, Thomas declared: "I strongly believe that the actions of [Linda and Preddy] have affected, and will continue to affect, my reputation, career, and general well-being. [¶] . . . The actions . . . have caused me, and continue to cause me, substantial emotional distress as I fear for my reputation, my relationships with friends and family, and my career with the San Diego Sheriff's Department." Thomas argued a preliminary injunction was necessary to prevent further wrongful "conduct that would only serve to negatively impact my personal and professional life and subject the defendants to civil and perhaps criminal liability."

Linda (who was not represented by counsel) filed a responsive pleading, denying each of Thomas's allegations, and asserting numerous affirmative defenses. But she did not present any evidence to counter Thomas's evidence. One week later, on April 13, 2007, the court held a hearing on Thomas's preliminary injunction motion. Thomas was represented by counsel. Linda appeared in propria persona.

At the hearing, the court stated it believed the preliminary injunction was "more than warranted" and confirmed a tentative ruling granting Thomas's motion. The court's written ruling stated: "[T]he Court finds, for the purpose of this motion, that there is a reasonable probability that [Thomas] will prevail on the merits of this action. [Thomas] has provided the Court sufficient evidence to establish the ongoing harassment activities by [Linda and Preddy]. Moreover, the Court finds that [Thomas] may suffer irreparable harm if [Linda and Preddy] are not: 1) enjoined from publishing false and defamatory statements and/or confidential personal information about him on the internet; and 2) enjoined from contacting [Thomas's] employer via email or otherwise regarding [Thomas]."

On the same day, Linda filed a cross-complaint against Thomas and his current spouse. In the complaint, Linda alleged 12 causes of action, including harassment, defamation and slander, common law torts, breach of privacy claims, and breach of contract.

Five days later, on April 18, the court issued the preliminary injunction challenged in this appeal. The preliminary injunction stated: "1. [Linda and Preddy] are enjoined from publishing false and defamatory statements and/or confidential personal information about [Thomas] on the internet; and [¶]

2. [Linda and Preddy] are enjoined from contacting [Thomas's] employer via e-mail or otherwise regarding [Thomas]. Since [Thomas] is employed by the San Diego Sheriff's Department, this injunction should not be construed to prohibit defendants from calling 911 to report criminal conduct."

Linda then moved for reconsideration of the preliminary injunction order. In support, Linda submitted a lengthy declaration and numerous exhibits. The declaration stated in part that (1) Preddy had no involvement with any e-mails or other communications made regarding Thomas; (2) Linda's Internet communications pertaining to the family law case were "done . . . to obtain . . . recommendations as to how she should proceed in future [family court proceedings]" and to obtain free legal representation and assistance from parenting organizations and advocates throughout the country; (3) all of Linda's communications have been "truthful and correct" and corroborated with supporting evidence and facts; and (4) all of Linda's communications discussed in Thomas's complaint and declaration were privileged because they "constituted a communication made in the course of a judicial or quasi-judicial proceeding, by a participant in the proceeding, for the purpose of achieving the object of litigation." Linda also submitted portions of reports and other documents, which she stated showed that Thomas had "struck [their] son . . . on or about November 01, 2002"; the Evans children have had a difficult relationship with Thomas that has caused problems for the children; and Thomas had threatened improper use of his law enforcement position against her.

Based on these and other facts, Linda argued that Thomas failed to present sufficient evidence to support his harassment and defamation claims. Linda also argued the preliminary injunction was improper on various additional grounds, including equitable estoppel principles, statute of limitations and laches, the anti-SLAPP (strategic lawsuit against public participation) statute, the litigation privilege, and constitutional principles prohibiting prior restraint.

The court granted Linda's reconsideration motion based on its finding that Linda had provided "different facts" to support her opposition. However, after considering those new facts and holding a hearing, the court reaffirmed its prior order. The court stated that "[t]he preliminary injunction issued on April 18, 2007 shall remain in full force and effect."

Linda appeals from the April 18 preliminary injunction order.

## DISCUSSION

In challenging the preliminary injunction, Linda raises numerous arguments. In part I, we conclude the order must be reversed because it is overbroad, vague, and an unconstitutional prior restraint before trial. In the unpublished portion of this case, we briefly address two of Linda's additional challenges to the preliminary injunction and find them to be without merit.

■ In reaching these conclusions, we apply well-settled law applicable to preliminary injunctions. To show entitlement to a preliminary injunction, a plaintiff must prove a likelihood of prevailing on the merits, and that the harm to the plaintiff from not granting the injunction outweighs the harm to the defendant if the injunction is issued pending trial. (*Butt v. State of California* (1992) 4 Cal.4th 668, 677–678 [15 Cal.Rptr.2d 480, 842 P.2d 1240].) "The trial court's determination must be guided by a 'mix' of the potential-merit and interim-harm factors; the greater the plaintiff's showing on one, the less must be shown on the other to support an injunction." (*Id.* at p. 678.)

We are governed by an abuse of discretion standard in determining whether the trial court properly evaluated these factors. To the extent the analysis depends on a determination of the constitutionality of the injunction, we independently review the question whether the trial court correctly interpreted and applied the applicable constitutional principles. (See *Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 408–409 [58 Cal.Rptr.3d 527].) Facts relevant to the constitutional analysis must be reviewed de novo, independent of the trial court's findings. (*DVD Copy Control Assn., Inc. v. Bunner* (2003) 31 Cal.4th 864, 889–890 [4 Cal.Rptr.3d 69, 75 P.3d 1] (*DVD Copy*).)

### I. *Constitutional Analysis*

#### A. *Generally Applicable Principles*

■ "The right to free speech is . . . one of the cornerstones of our society," and is protected under the First Amendment of the United States Constitution and under an "even broader" provision of the California Constitution. (*Hurvitz v. Hoefflin* (2000) 84 Cal.App.4th 1232, 1241 [101 Cal.Rptr.2d 558]; see Cal. Const., art. I, § 2, subd. (a).) An injunction that forbids a citizen from speaking in advance of the time the communication is to occur is known as a "prior restraint." (*DVD Copy, supra,* 31 Cal.4th at p. 886; *Hurvitz v. Hoefflin, supra,* 84 Cal.App.4th at p. 1241.) A prior restraint is " 'the most serious and the least tolerable infringement on First Amendment

rights.' " (*DVD Copy, supra,* 31 Cal.4th at p. 886; see *Near v. Minnesota* (1931) 283 U.S. 697, 713 [75 L.Ed. 1357, 51 S.Ct. 625].) Prior restraints are highly disfavored and presumptively violate the First Amendment. (*Maggi v. Superior Court* (2004) 119 Cal.App.4th 1218, 1225 [15 Cal.Rptr.3d 161]; *Hurvitz v. Hoefflin, supra,* 84 Cal.App.4th at p. 1241.) This is true even when the speech is expected to be of the type that is not constitutionally protected. (See *Near v. Minnesota, supra,* 283 U.S. at pp. 704–705 [rejecting restraint on publication of any periodical containing "malicious, scandalous and defamatory" matter].)

■ To establish a valid prior restraint under the federal Constitution, a proponent has a heavy burden to show the countervailing interest is compelling, the prior restraint is necessary and would be effective in promoting this interest, and less extreme measures are unavailable. (See *Hobbs v. County of Westchester* (2d Cir. 2005) 397 F.3d 133, 149; see also *Nebraska Press Assn. v. Stuart* (1976) 427 U.S. 539, 562–568 [49 L.Ed.2d 683, 96 S.Ct. 2791].) Further, any permissible order "must be couched in the narrowest terms that will accomplish the pin-pointed objective permitted by constitutional mandate and the essential needs of the public order. . . ." (*Carroll v. Princess Anne* (1968) 393 U.S. 175, 183–184 [21 L.Ed.2d 325, 89 S.Ct. 347].)

Even if an injunction does not impermissibly constitute a prior restraint, the injunction must be sufficiently precise to provide "a person of ordinary intelligence fair notice that his contemplated conduct is forbidden." (*United States v. Harriss* (1954) 347 U.S. 612, 617 [98 L.Ed. 989, 74 S.Ct. 808]; see also *People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1115 [60 Cal.Rptr.2d 277, 929 P.2d 596].) An injunction is unconstitutionally vague if it does not clearly define the persons protected and the conduct prohibited.

Under these constitutional principles, we examine three separate parts of the court's April 18 preliminary injunction: (1) the prohibition against publishing "false and defamatory statements" about Thomas on the Internet; (2) the prohibition against publishing "confidential personal information" about Thomas on the Internet; and (3) the prohibition against contacting the Sheriff's Department about Thomas except to call 911 in an emergency to report criminal conduct.

### B. *Prohibition Against Publishing False and Defamatory Statements*

■ An order prohibiting a party from making or publishing false statements is a classic type of an unconstitutional prior restraint. (See *Metropolitan*

*Opera Ass'n, Inc. v. Local 100* (2d Cir. 2001) 239 F.3d 172, 176.) "While [a party may be] held responsible for abusing his right to speak freely in a subsequent tort action, he has the initial right to speak freely without censorship." (*Gilbert v. National Enquirer, Inc.* (1996) 43 Cal.App.4th 1135, 1145 [51 Cal.Rptr.2d 91].)

The California Supreme Court recently recognized this fundamental principle, but held the rule does not apply to an order issued after a trial prohibiting the defendant from *repeating specific statements found at trial to be defamatory.* (*Balboa Island Village Inn, Inc. v. Lemen* (2007) 40 Cal.4th 1141, 1155–1156 [57 Cal.Rptr.3d 320, 156 P.3d 339] (*Balboa Island*).) In *Balboa Island,* the court, sitting without a jury, made factual findings that the defendant had repeatedly defamed a business entity (a restaurant), and issued a permanent injunction prohibiting the defendant from making certain specified defamatory statements about the restaurant. (*Id.* at pp. 1144–1146.) Each of the prohibited statements was determined at trial to be false. (*Ibid.*)

█ The California Supreme Court held that although other aspects of the injunction were overbroad, the defendant's "right to free speech would not be infringed by a properly limited injunction prohibiting defendant from repeating statements about plaintiff that were determined at trial to be defamatory." (*Balboa Island, supra,* 40 Cal.4th at p. 1144.) The court explained: " 'Once specific expressional acts are properly determined to be unprotected by the first amendment, there can be no objection to their subsequent suppression or prosecution.' " (*Id.* at p. 1156.) Thus, "an injunction issued *following a trial* that determined that the defendant defamed the plaintiff that does no more than prohibit the defendant from repeating the defamation, is not a prior restraint and does not offend the First Amendment." (*Id.* at p. 1148, italics added.) The court emphasized that "In determining whether an injunction restraining defamation may be issued . . . it is crucial to distinguish requests for preventive relief prior to trial and posttrial remedies to prevent repetition of statements judicially determined to be defamatory. . . . 'The attempt to enjoin the initial distribution of a defamatory matter meets several barriers, the most impervious being the constitutional prohibitions against prior restraints on free speech and press. . . . In contrast, an injunction against continued distribution of a publication which a jury has determined to be defamatory may be more readily granted. The simplest procedure is to add a prayer for injunctive relief to the action for damages. . . . Since the constitutional problems of a prior restraint are not present in this situation, and the defendant has not been deprived of a jury determination, injunctions should be available as ancillary relief for . . . personal and political

defamations.' " (*Id.* at p. 1158, italics omitted, quoting 1 Hanson, Libel and Related Torts (1969) § 170, pp. 139–140.)

██ Under these principles, the court's preliminary injunction prohibiting Linda from publishing any "false and defamatory" statements on the Internet is constitutionally invalid. Because there has been no trial and no determination on the merits that any statement made by Linda was defamatory, the court cannot prohibit her from making statements characterized only as "false and defamatory." (See *Balboa Island, supra,* 40 Cal.4th at p. 1158; *Wilson v. Superior Court* (1975) 13 Cal.3d 652, 658–659 [119 Cal.Rptr. 468, 532 P.2d 116].)

██ This portion of the order is also invalid as unconstitutionally vague and overbroad. The injunction broadly prohibited Linda from publishing any defamatory comments about Thomas. This sweeping prohibition fails to adequately delineate which of Linda's future comments might violate the injunction and lead to contempt of court. (See *Balboa Island, supra,* 40 Cal.4th at p. 1159.) The fact that the court's prohibition on publishing false materials applied only to speech on the Internet does not affect our analysis. The courts have made clear that speech on the Internet is accorded the same First Amendment protection as speech on other forums. (See *Reno v. American Civil Liberties Union* (1997) 521 U.S. 844, 870 [138 L.Ed.2d 874, 117 S.Ct. 2329]; *Krinsky v. Doe 6* (2008) 159 Cal.App.4th 1154, 1164 [72 Cal.Rptr.3d 231].)

We emphasize that our conclusion should not be interpreted as an opinion on the merits of Thomas's defamation claims. It is well settled that a plaintiff may recover damages for speech that is proved to be defamatory or libelous. Additionally, a court may enjoin a defendant after trial from repeating defamatory statements. The only issue resolved here is that a court may not constitutionally prevent a person from uttering a "defamatory" statement before it has been determined at trial that the statement was defamatory.

C. *Publishing "Confidential Personal Information" on the Internet*

In addition to enjoining "false and defamatory statements," the court also enjoined Linda from "publishing . . . confidential personal information about [Thomas] on the internet."

██ A prohibition against disclosing confidential information constitutes a prior restraint. (See *Hurvitz v. Hoefflin, supra,* 84 Cal.App.4th at p. 1244.)

However, because it also potentially concerns the countervailing right of privacy protected under the California Constitution (Cal. Const., art. I, § 1), a prohibition may be proper under certain compelling or "extraordinary" circumstances. (See *Wilson v. Superior Court, supra,* 13 Cal.3d at pp. 661–662; *Gilbert v. National Enquirer, Inc., supra,* 43 Cal.App.4th at p. 1145; see also *Shulman v. Group W Productions, Inc.* (1998) 18 Cal.4th 200, 245 [74 Cal.Rptr.2d 843, 955 P.2d 469] (conc. opn. of Kennard, J.); *In re Marriage of Burkle* (2006) 135 Cal.App.4th 1045, 1059–1060, 1063 [37 Cal.Rptr.3d 805].)

In determining whether such circumstances exist, courts generally apply a balancing test, weighing the competing privacy and free speech constitutional rights. (See *Gilbert v. National Enquirer, Inc., supra,* 43 Cal.App.4th at p. 1148; *Dickson v. Dickson* (1974) 12 Wn.App. 183 [529 P.2d 476, 478]; see also *Kapellas v. Kofman* (1969) 1 Cal.3d 20, 37–38 [81 Cal.Rptr. 360, 459 P.2d 912]; *In re Marriage of Burkle, supra,* 135 Cal.App.4th at pp. 1059–1061; *Smith v. Silvey* (1983) 149 Cal.App.3d 400, 407 [197 Cal.Rptr. 15].) Relevant factors include whether the person is a public or private figure, the scope of the prior restraint, the nature of the private information, whether the information is of legitimate public concern, the extent of the potential harm if the information is disclosed, and the strength of the private and governmental interest in preventing publication of the information.

■ We cannot determine whether the court properly applied the balancing test in this case because the order is ambiguous as to the meaning of "confidential personal information." The order does not contain a definition of "confidential personal information" and it is not reasonably possible to determine the scope of this prohibition from any other source. Without a definition, the injunction is not sufficiently clear to determine whether Thomas's privacy rights to the information substantially outweigh Linda's free speech rights. Moreover, the reference to "confidential personal information" did not provide Linda with a reasonable basis to understand what she was prohibited from placing on the Internet. An injunction must clearly define the conduct prohibited. (See *United States v. Harriss, supra,* 347 U.S. at p. 617; see also *People ex rel. Gallo v. Acuna, supra,* 14 Cal.4th at p. 1115.)

In his appellate briefs, Thomas seeks to justify this portion of the order by suggesting that Linda will place (or has placed) his telephone number, address, and Social Security number on the Internet. He argues the disclosure of the information will put his safety and well-being in jeopardy, particularly because of his job as a deputy sheriff. We agree a court would be fully justified in issuing an order preventing a party from putting this type of identifying information about another person on the Internet, particularly where, as here, that person is a law enforcement officer. To the extent that

Thomas seeks such an order and supports this request with evidence, the court would be justified in immediately ordering that this information be kept private. Such a restriction does not involve information that has any public value and would serve the significant public interest of protecting the safety of a law enforcement officer.

 However, in the proceedings below, Thomas did not specifically request an order preventing his identifying information from being placed on the Internet. Instead, Thomas focused primarily on his concern that Linda and/or her mother had placed, or planned to place, information about the divorce proceedings on the Internet, including information that had been contained in the family court file. However, the mere fact that information is contained in court files or concerns divorce proceedings does not necessarily mean it is confidential and cannot be disclosed. (See *In re Marriage of Burkle, supra*, 135 Cal.App.4th at p. 1062 [" 'The contents of the file of a divorce proceeding are "historically and presumptively" a matter of public record.' "].) To be sure, certain information relating to family law proceedings may be protected from disclosure, such as information that would harm the best interests of the children if publicly disclosed, information obtained through discovery, and information that would compromise a person's financial security or personal safety. (See *id.* at pp. 1063–1069; *In re Marriage of Candiotti* (1995) 34 Cal.App.4th 718, 722–726 [40 Cal.Rptr.2d 299].) But an order enjoining the disclosure must be narrowly tailored to protect only these specific interests and should not unnecessarily interfere with a person's free speech rights. (*In re Marriage of Candiotti, supra*, 34 Cal.App.4th at pp. 722–726.)

Accordingly, we conclude the order preventing Linda from placing any "confidential personal information" about Thomas on the Internet is vague, overbroad, and not narrowly tailored. On remand, the court should reevaluate Thomas's request that Linda be enjoined from publishing (or causing to be published) confidential information on the Internet. After determining the information that Thomas seeks to be kept private, the court should engage in a balancing test to determine whether there is a compelling reason that such information be kept private. A compelling reason includes, but is not limited to, facts showing the disclosure of information would jeopardize the personal safety of Thomas or his family and/or would lead him to fear for his or his family's personal safety. If a compelling reason exists, the court should immediately enjoin Linda from publishing the information.

### D. *Restrictions on Contacting Sheriff's Department*

The third portion of the challenged preliminary injunction prohibits Linda from contacting the Sheriff's Department concerning Thomas except to call "911 to report criminal conduct."

In *Balboa Island*, the trial court's injunction restricted the defendant from repeating the statements found to be defamatory at trial. (*Balboa Island, supra*, 40 Cal.4th at p. 1146.) The California Supreme Court held these provisions were overbroad, explaining: "[T]he injunction must not prevent [the defendant] from presenting her grievances to government officials. The right to petition the government for redress of grievances is 'among the most precious of the liberties safeguarded by the Bill of Rights.' [Citation.] Accordingly, [the] paragraph . . . which prohibits [the defendant] 'from making the [specified] defamatory statements about Plaintiff to third persons' must be modified to prohibit [the defendant] 'from making the [specified] defamatory statements about Plaintiff to third persons *other than governmental officials with relevant enforcement responsibilities.*' " (*Id.* at pp. 1160–1161, italics added.)

Similarly in this case, the order prohibiting Linda from communicating with the Sheriff's Department about Thomas except in emergencies about criminal conduct is overbroad. Reasonably interpreted, the order would prohibit Linda from communicating information to the Sheriff's Department about Thomas which she believes would be relevant to law enforcement concerns. Even if the information does not directly concern criminal conduct or an emergency, the information may be relevant to public safety issues or to Linda's subjective feelings of personal safety. Private citizens have the fundamental right to present concerns to government agencies, particularly an agency that has law enforcement jurisdiction over the area in which the citizen resides. (See *Balboa Island, supra*, 40 Cal.4th at pp. 1160–1161.) Whether the agency finds these concerns to be valid or substantiated is, of course, a different question.

Balanced against the substantial burden on Linda's constitutional petitioning rights resulting from the court's restrictions on her communications with the Sheriff's Department, there was minimal evidence in the record supporting the need for a pretrial injunction on these communications.

First, the record does not show that the complaints were numerous or improper. In support of his motion, Thomas presented evidence showing only that Linda had made one complaint in April 2005, and another complaint in March 2007 that related to information provided to her by Thomas. Although Thomas also referenced "defamatory" letters sent to the Sheriff's Department in December 2006, he provided no information that these letters were sent by Linda.

Second, the record did not show Thomas would suffer substantial detriment if the injunction was denied pending trial. Thomas said he "believe[d]" the complaints were the reason that he was not promoted. However, there was no supporting evidence of this claim. Thomas did not present any evidence from the Sheriff's Department that the complaints were a factor in the promotion decision, nor did he present any evidence that he was told this was the case. Thomas also said the "embarrassment" caused by Linda's conduct caused him to decide to "seek a less prominent job" within the department, and that her complaints "will hinder my ability to conduct my duties and may bring negative light to the department and assignment." However, these concerns alone do not show a need for injunctive relief pending trial.

Moreover, the record did not support the conclusion that Thomas would prevail on his causes of action challenging Linda's complaints to the Sheriff's Department. The California Supreme Court has held that a citizen's report to law enforcement personnel seeking investigation of alleged wrongful activities is absolutely privileged. (*Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 360–376 [7 Cal.Rptr.3d 803, 81 P.3d 244].) " 'An absolute privilege exists to protect citizens from the threat of litigation for communications to government agencies whose function it is to investigate and remedy wrongdoing.' " (*Id.* at p. 362.)

Additionally, there are less intrusive means to limit Linda's filing false complaints with the Sheriff's Department. Government agencies can establish reasonable requirements before an individual may be permitted to file a complaint. If the Sheriff's Department believes the complaints are unwarranted or burdensome, it has the authority to take administrative action to address these problems.

Based on the record before us, the court's order enjoining Linda from contacting the Sheriff's Department about Thomas absent an emergency was overbroad and was not justified by the evidentiary record. This conclusion does not suggest any opinion as to whether the court—on a more developed factual record—may issue a permanent injunction limiting Linda's contacts with Thomas's employer after trial.

II. *Additional Contentions*\*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

\*See footnote, *ante*, page 1157.

## DISPOSITION

The preliminary injunction order is reversed, and the matter is remanded for the court to reconsider the order consistent with the views expressed in this opinion. The parties to bear their own costs on appeal.

Huffman, Acting P. J., and McIntyre, J., concurred.