Filed 6/25/26  Boisot v. Logan CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| SASKIA BOISOT,<br><br>     Respondent,<br><br>     v.<br><br>SHARON LOGAN,<br><br>     Appellant. | D085234<br><br><br>(Super. Ct. No. 37-2024-00019811-CU-HR-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Rebecca F. Zipp, Judge.  Affirmed as modified.

Sharon Logan, in pro. per., for Appellant.

Dennis Temko for Respondent.

## I. INTRODUCTION

Saskia Boisot and Sharon Logan filed requests for restraining orders against each other based on online harassment.  The trial court granted Boisot's request but denied Logan's.  Logan appealed, arguing the trial court was biased and failed to disqualify itself.  Logan also challenges the trial court's evidentiary rulings, the constitutionality of the restraining order, and

a subsequent attorney fee award.  We find the restraining order overbroad and modify it accordingly.  Otherwise, we find no error and affirm the order as modified.

## II. BACKGROUND

Boisot is a physician, and she runs a nonprofit dog rescue organization. Boisot met Logan in 2015 through animal advocacy work.  Their relationship deteriorated around 2018, and they ceased speaking with each other.

Logan was never a patient of Boisot's, and Logan had no firsthand knowledge of Boisot's medical practice.  In 2020, despite not having any contact with Boisot in the prior two years, Logan filed a complaint against Boisot with the California Medical Board.

Then, in 2022, Logan began posting about Boisot on several websites and social media accounts bearing Boisot's name.  These publications contained inaccurate information, including that Boisot was a criminal, Boisot was grossly negligent in her medical practice and rescue organization, and Boisot had bipolar disorder and had been institutionalized multiple times.  Logan's posts also disclosed matters from the sealed file in Boisot's divorce case, including unproven allegations.

Logan purportedly published this material in retaliation against Boisot. Logan believed that Boisot posted negative material about Logan through several social media accounts and the website *fivetimefinancialfelon.com* (5-Time).  Logan held this belief based on the "verbiage" used in those internet publications.

On April 29, 2024, Boisot filed a civil harassment restraining order request against Logan based on Logan's internet publications.  Boisot's requested relief included an order that Logan take down and refrain from

using any websites or social media pages containing Boisot's name or likeness.

Logan responded with a cross-petition seeking a restraining order against Boisot. Logan alleged Boisot was harassing her on social media and 5-Time.

Boisot subpoenaed Automattic, Inc. (Automattic), the registrar[1] of 5-Time, requesting information identifying the owner of the website. An individual using the pseudonym Jane Doe filed a motion to quash that subpoena. Jane Doe argued that she was the owner of the website with a First Amendment right to remain anonymous, and that Boisot did not own the website or contribute to its content.

The trial court ordered Automattic to produce the subpoenaed records under seal for the trial court's in camera review. At the hearing on the motion to quash, the trial court concluded that Boisot did not create 5-Time because the Automattic records revealed a different creator. The trial court therefore found the Automattic records irrelevant and granted the motion to quash.

The trial court then stated that for the purpose of the upcoming restraining order hearing, it intended to take judicial notice of the fact that Boisot did not create 5-Time. When asked for input on this ruling, Logan's counsel did not object and instead asked that the court take judicial notice or inform the parties as to whether 5-Time's creator was Rebecca Arvizu, an individual that Logan suspected as the website's owner. The trial court denied that request. Logan's counsel sought clarification of the ruling, and

---

[1]    A website registrar is a company that allows you to register and manage internet domain names.

the trial court confirmed that it was not prohibiting any subsequent motion to learn the identity of 5-Time's creator.

Prior to the hearing on the restraining order requests, Logan filed a statement of disqualification pursuant to Code of Civil Procedure section 170.3.[2] The trial court found no grounds for disqualification and ordered the statement of disqualification stricken.

After several days of evidentiary hearings in September 2024, the trial court dismissed without prejudice Logan's request for a restraining order. The trial court found no evidence linking Boisot to the website and social media accounts about which Logan complained.

As for Boisot's request, the trial court found that Logan's online statements about Boisot were harassing and defamatory. The trial court therefore issued a five-year restraining order against Logan, requiring that Logan stay 100 yards away from Boisot and that Logan take down all content from three specific social media accounts, "as well as any and all other social media-based content" regarding Boisot's medical practice and/or divorce case. The order also prohibited Logan from observing or attending Boisot's divorce case without prior court approval, obtaining and disseminating information about Boisot's divorce case without prior court approval, and disseminating confidential personal information about Boisot's medical practice absent firsthand knowledge of such. As to each of the last items, and should she contact the medical board about Boisot, the court ordered Logan to provide the court or agency from which she wanted a response a copy of restraining order against her from this case along with the request or complaint.

---

[2]    Undesignated statutory references are to the Code of Civil Procedure.

Further, the trial court forbid Logan from "making knowingly false statements about . . . Boisot." Logan's timely appeal followed.

Two months later, on November 20, 2024, the trial court partially granted Boisot's request for attorney fees and costs as the prevailing party. Boisot sought a total of $101.859.49; the trial court awarded $32,541.40.

III. DISCUSSION

A.     *Boisot's Motion to Dismiss is Denied*

Boisot moved to dismiss the appeal under the disentitlement doctrine because Logan has not paid the attorney fees and costs the trial court awarded to Boisot.

"Under the disentitlement doctrine, a reviewing court has inherent power to dismiss an appeal when the appealing party has refused to comply with the orders of the trial court. [Citation.] ' "Appellate disentitlement 'is not a jurisdictional doctrine, but a discretionary tool that may be applied when the balance of the equitable concerns make it a proper sanction.' " ' " (*Ironridge Global IV, Ltd. v. ScripsAmerica, Inc.* (2015) 238 Cal.App.4th 259, 265.)

"The disentitlement doctrine 'is particularly likely to be invoked where the appeal arises out of the very order (or orders) the party has disobeyed.' " (*Ironridge Global IV, Ltd. v. ScripsAmerica, Inc., supra,* 238 Cal.App.4th at p. 265.) Additionally, " '[t]he right to an appeal must not be lightly forfeited, and where a doubt exists as to a litigant's conduct being contumacious or wilful, an appellate court will tolerate temporarily the acts which were disruptive of the judicial process.' " (*Stoltenberg v. Ampton Investments, Inc.* (2013) 215 Cal.App.4th 1225, 1231.)

Here, Boisot does not allege that Logan disobeyed the restraining order that is the subject of this appeal. And while we do not condone Logan's

5

failure to comply with the trial court's subsequent cost and fee award, dismissing the appeal based on that conduct alone would not be equitable here. We therefore deny Boisot's motion.

## B. *Standards of Review*

"[A] trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment. . . . ' "[I]f the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed." ' " (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609.)

"In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record. Rather than scour the record unguided, we may decide that the appellant has waived a point urged on appeal when it is not supported by accurate citations to the record." (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286–287.) Additionally, " '[i]t is well settled . . . " 'that issues not raised in the trial court cannot be raised for the first time on appeal.' " ' " (*Eng v. Opperman* (2025) 117 Cal.App.5th 354, 373.) "The rule is ' " 'based on fairness—it would be unfair, both to the trial court and the opposing litigants, to permit a change of theory on appeal.' " ' " (*Id.* at p. 374.)[3]

---

[3]     As a self-represented litigant, Logan is entitled to the same but no greater consideration than other litigants, and she must therefore follow the rules of appellate procedure. (*County of Sacramento v. Singh* (2021) 65 Cal.App.5th 858, 861.)

6

"We review a trial court's rulings on the admissibility of evidence for abuse of discretion." (*Pilliod v. Monsanto Company* (2021) 67 Cal.App.5th 591, 630.) We independently review Logan's constitutional claims. (*Evans v. Evans* (2008) 162 Cal.App.4th 1157, 1166 (*Evans*).)

C.    *The Trial Court's Ruling on Disqualification Is Not Reviewable, and Logan Has Failed to Show Judicial Bias*

Logan argues the trial court erred in denying her request for disqualification. She further contends that the trial court's rulings and management of the case after the disqualification ruling demonstrate judicial bias amounting to a due process violation.

"The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate." (§ 170.3, subd. (d).) We therefore lack jurisdiction over Logan's claim that the trial court improperly denied her disqualification request.

Turning to the alleged due process violation, "section 170.3, subdivision (d), does not bar appeal from a final judgment on constitutional grounds of judicial bias." (*Tri Counties Bank v. Superior Court* (2008) 167 Cal.App.4th 1332, 1339.) We therefore examine this argument.

First, Logan relies on various adverse rulings to demonstrate her claim. However, "[n]umerous and continuous rulings against a party are not grounds for a finding of bias." (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 589.)

Second, Logan's assertion that the trial court was hostile towards her attorney is unsupported. We observe that even though a substitution of attorney was not on file for Logan's counsel, the trial court did not limit his participation as Logan alleges. Instead, the trial court allowed Logan's counsel to appear based on opposing counsel's representation that she had

7

received the substitution of counsel notice. Nor was it improper for the court to admonish Logan's counsel that he was not properly dressed for court when he appeared in a T-shirt. Further, the trial court had an adequate basis to consider contempt. In addition to the inappropriate clothing, the trial court noted that Logan's attorney repeatedly "impugned the impartially and integrity of [the] court," "exhibited a tone of voice and facial expressions which were rude," and "rolled [his] eyes, [he] repeatedly sighed, and [he] threw [his] hand down by [his] side at numerous times" in response to adverse rulings. The trial court's decision to consider, but not pursue, contempt proceedings therefore does not show bias. (See, e.g., § 1209, subd. (a)(1) defining contempt as including "[d]isorderly, contemptuous, or insolent behavior toward the judge while holding the court"].)

Finally, Logan's claims that the trial judge prejudged her credibility, prepared its ruling in advance, was biased based on its experience as a prosecutor, and improperly limited Logan's presentation of evidence find no support in the record.

Based on the foregoing, we see no judicial bias or resulting due process violation.

D. *Logan Fails to Establish Evidentiary Error*

Logan claims the trial court improperly excluded several pieces of evidence. For several of those items (false police report, records of Boisot's rescue organization, Boisot's psychiatric records, and a prior appellate opinion) Logan provides no record citations. For others ("stylistic analysis, metadata, . . . social media connections[,] . . . public records[,] and prior litigation documents"), Logan cites page numbers of the reporter's transcript that do not exist. Logan also cites the trial court's ruling on several documents identified "Court's Exhibit 1," but those documents are not

8

included in the record. Logan has therefore failed to carry her burden of demonstrating errors on these matters. (*City of Santa Maria v. Adam, supra,* 211 Cal.App.4th at pp. 286–287; *Jameson v. Desta, supra,* 5 Cal.5th at p. 609.)

Logan also argues the trial court erred in its rulings regarding Jane Doe's motion to quash. Logan contends the trial court deprived her of relevant discovery and failed to consider her claim that Boisot contributed to 5-Time's content. Logan further claims that the trial court improperly took judicial notice of the fact that Boisot did not create 5-Time.

When assessing a subpoena that seeks to disclose the identity of an unknown speaker on the internet, the court must balance the speaker's First Amendment right to anonymity against the subpoenaing parties' interest in discovering the speaker's identity in order to pursue his or her claim. (*Krinsky v. Doe 6* (2008) 159 Cal.App.4th 1154, 1165.) Here, the trial court had documents showing that Jane Doe owned the website, and that Jane Doe was not Boisot. Further, the trial court did not prohibit Logan from pursuing any additional discovery from Jane Doe, including a future motion to learn her identity. The trial court also permitted Logan to introduce evidence of Boisot's connection with the website, ultimately concluding that such evidence was unpersuasive.

Under these circumstances, the trial court properly balanced Logan's discovery needs against Jane Doe's First Amendment right to remain anonymous. Additionally, the trial court did not prohibit discovery or admission of evidence regarding Logan's connection to the website. We therefore see no error.

As for judicial notice of the fact that Boisot did not create the website, Logan did not object to that ruling and instead requested judicial notice of an

9

additional fact.  This issue is therefore forfeited.  (*Hearn Pacific Corp. v. Second Generation Roofing, Inc.* (2016) 247 Cal.App.4th 117, 131 ["' " '[Q]uestions relating to the admissibility of evidence will not be reviewed on appeal in the absence of a specific and timely objection in the trial court on the ground sought to be urged on appeal.' " ' "].)

*E.     Portions of the Order Are Overbroad, but Logan's Other First Amendment Claims Fail*

Logan argues that the First Amendment protected her conduct because it was based on public records and a matter of public concern, and the trial court failed to apply constitutional standards.  However, "[w]hile speech ' "on' "matters of public concern" ' . . . is 'at the heart of the First Amendment's protection' " ' [citations], defamatory speech is not constitutionally protected." (*E.G. v. M.L.* (2024) 105 Cal.App.5th 688, 703.)  The trial court found Logan's speech defamatory; therefore, we see constitutional infirmity here.

Logan also argues that Boisot's petition was subject to an anti-SLAPP motion.  Logan filed no such motion in the trial court, so the issue has been forfeited.  (*Eng v. Opperman, supra,* 117 Cal.App.5th at p. 373.)

However, we agree with Logan that portions of the restraining order are overbroad and unconstitutional prior restraints.  "An injunction that forbids a citizen from speaking in advance of the time the communication is to occur is known as a 'prior restraint.' " (*Evans, supra*, 162 Cal.App.4th 1157, 1166.)  "Prior restraints are highly disfavored and presumptively violate the First Amendment." (*Evans*, at p. 1167.)

"To establish a valid prior restraint under the federal Constitution, a proponent has a heavy burden to show the countervailing interest is compelling, the prior restraint is necessary and would be effective in promoting this interest, and less extreme measures are unavailable.

10

[Citations.] Further, any permissible order 'must be couched in the narrowest terms that will accomplish the pin-pointed objective permitted by constitutional mandate and the essential needs of the public order.' " (*Evans, supra,* 162 Cal.App.4th at p. 1167.) Additionally, " 'an injunction issued *following a trial* that determined that the defendant defamed the plaintiff that does no more than prohibit the defendant from repeating the defamation, is not a prior restraint and does not offend the First Amendment.' " (*Evans,* at p. 1168.)

Attachment 11 to the restraining order contains six bullet points enjoining specific conduct. Under the second bullet point, Logan is "enjoined from disseminating information obtained from the court file of The Family Case, absent a court order"[4] and under the third, she is "barred from observing, attending, or attempting to obtain records from The Family Case absent a court order." The second bullet point is an overbroad prior restraint, while the third infringes on Logan's court access rights. (See, e.g., *In re Marriage of Tamir* (2021) 72 Cal.App.5th 1068, 1078 ["California law also recognizes a constitutional right of access, grounded in the First Amendment, to court proceedings and court documents."].)

We also note that the second and third bullet points in Attachment 11 are duplicative of existing orders. For example, Logan already needs court approval to access records from the divorce case because it has been sealed. Logan is also barred from attending proceedings in the divorce case when Boisot is present due to the 100-yard stay-away provision of the restraining order.

---

4    "The Family Case," as adopted by the trial court, refers to Dr. Boisot's divorce case.

11

Under these circumstances, we will exercise our inherent power to modify the judgment (§ 43) to properly tailor the restraining order based on the parties' competing interests. The second and third bullet points in Attachment 11 shall be removed and replaced with a new bullet point stating, "Ms. Logan is prohibited from disseminating information obtained from the court file of The Family Case unless that information is obtained by following the proper procedure for accessing sealed records."

Additionally, the fourth bullet point in Attachment 11 states "Logan is enjoined from disseminating 'confidential personal information' about Dr. Boisot's medical practice absent firsthand knowledge of such," and the sixth states that Logan shall "not knowingly make false statements about Dr. Boisot." These are vague and overbroad prior restraints. (See, e.g., *Evans, supra*, 162 Cal.App.4th at p. 1167 ["An order prohibiting a party from making or publishing false statements is a classic type of an unconstitutional prior restraint."].) However, the trial court found that Logan's online postings about Boisot were defamatory. As such, an order prohibiting those statements " 'is not a prior restraint and does not offend the First Amendment.' " (*Evans*, at p. 1168.) We therefore modify the order to delete the fourth and sixth bullet points and to add a new bullet point stating, "Ms. Logan is enjoined from disseminating any of the information posted on saskiaboisot.com, the Instagram page criminaldocsaskiaboisot, and the Facebook page Warning About Saskia Boisot Pitt Bull Rehabber Underdog Alliance."

As modified, we will affirm the judgment.

F.     *We Lack Jurisdiction Over the Attorney Fee Order*

Logan challenges the November 11, 2024 order awarding attorney fees to Boisot. " 'An appellate court has no jurisdiction to review an award of

attorney fees made after entry of the judgment, unless the order is separately appealed.' " (*Colony Hill v. Ghamaty* (2006) 143 Cal.App.4th 1156, 1171; see also, *Krug v. Maschmeier* (2009) 172 Cal.App.4th 796, 800 & fn. 4 [attorney fee award under § 527.6 is "appealable as a postjudgment order"].)  Logan's notice of appeal was filed prior to, and does not reference, the trial court's award of attorney fees to Boisot.  Nor did Logan file a separate notice of appeal regarding the attorney fee award.  Accordingly, we do not have jurisdiction to consider Logan's challenges to the attorney fee award.

G.      *We Do Not Consider the New Matters Raised in Logan's Reply Brief*

Logan raises several new matters in her reply brief.  She discusses events occurring after the appealed order, newly discovered evidence, and she requests that we make factual findings and impose sanctions against Boisot and her counsel.  Logan has not shown good reason for her failure to raise these issues in her opening brief so we will not consider them.  (*High Sierra Rural Alliance v. County of Plumas* (2018) 29 Cal.App.5th 102, 112, fn. 2.)

## IV. DISPOSITION

The order is affirmed as modified.  The trial court shall issue a new restraining order containing the modifications to Attachment 11 discussed above.  Boisot is awarded costs on appeal.

RUBIN, J.

WE CONCUR:

DO, Acting P. J.

BUCHANAN, J.