[No. C052442. Third Dist. Mar. 20, 2007.]

JOE J. MACHADO et al., Petitioners, v.
THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, Respondent,
MICHAEL ATHERTON et al., Real Parties in Interest.

**COUNSEL**

Freidberg & Parker, Edward Freidberg, Alan W. Foutz and Susanna V. Pullen for Petitioners.

No appearance for Respondent.

Morgan, Miller & Blair and Joshua D. Cohen for Real Parties in Interest.

**OPINION**

**MORRISON, J.**—Petitioner Joe J. Machado challenges an order disqualifying his counsel, Ed Freidberg, in a pending action. The motion was filed by a nonparty, Michael Atherton, Freidberg's former client and business partner. We conclude that although ordinarily a nonparty must file a separate action to prevent former counsel from continuing with an adverse representation, in this case Atherton has standing to make the motion because he is alleged to be the alter ego and coconspirator of a party, and because this case was filed in order to evade a prior disqualification order in a related case in which Atherton is a named party. We also conclude, contrary to some published authority, that because a disqualification order may be appealed immediately, it may not be reviewed on appeal from a final judgment. For this reason, the prior disqualification order in the related case is a final order for purposes of issue preclusion. Because the disqualification motions in the two cases raised the same issues, review of the merits of the latter order is precluded. We deny the writ.

### FACTUAL AND PROCEDURAL BACKGROUND

This matter involves three superior court cases, which we refer to as the *Brocchini*, *Woodward* and *Calone* cases. For convenience we group some parties together, as was done in some of the trial court papers and in the briefing in this court.

### A. *Brocchini*

The Freidberg Law Corporation, with Freidberg as the principal, represented Atherton in a partnership dispute. (*Atherton v. Brocchini* (Super. Ct.

San Joaquin County, 1990, No. 211111).) After we reversed an order disqualifying Freidberg (*Atherton v. Brocchini* (May 17, 1991, C008515) [nonpub. opn.]), the matter was settled such that Atherton and Freidberg became partners in a company holding realty acquired during the lawsuit; Freidberg's one-third interest satisfied the legal fees Atherton owed Freidberg. The partnership dissolved in 1997 after the last parcel was sold.

### B. *Woodward*

Woodward, a joint venture controlled by Atherton, sued Machado, alleging breach of a realty contract. (*Woodward v. Machado* (Super. Ct. San Joaquin County, No. CV025615).) This case is not factually related to *Brocchini*. Machado retained Freidberg, who filed a cross-complaint against Woodward and Atherton on March 28, 2005. The cross-complaint alleges in part that Machado's prior attorney, Richard Calone, cheated Machado by advising him to agree to sale terms favorable to Atherton: "In furtherance of the conspiracy, Atherton . . . agreed to pay Richard Calone a secret $520,500 'finder's fee' bribe, and memorialized such agreement in writing . . . dated April 17, 2001 (five months *before* the execution of the contract at issue . . . [dated] September 7, 2001)." Calone is not a named cross-defendant, although several Does are sued and alleged to be the agents, alter egos or coconspirators of all other cross-defendants.

Atherton moved to disqualify Freidberg, based on his representation of Atherton in *Brocchini* through 1993 and based on the ensuing land partnership which dissolved at the end of 1997. Atherton alleged Freidberg "was privy to a substantial amount of [Atherton's] private information including, but not limited to, business secrets, business practices, litigation preferences and personal tendencies."

In opposition Machado declared it was "critical" that Freidberg represent him. Freidberg declared that after our reversal of the disqualification order in *Brocchini*, he had performed few legal services for Atherton, but he admitted the land partnership lasted until 1997.

On July 7, 2005, Judge Saiers granted Atherton's motion to disqualify Freidberg. On September 8, 2005, we denied Machado's petition for a writ to overturn that ruling. (*Machado v. Superior Court* (Sept. 8, 2005, No. C050505) [nonpub. order].) Machado did not appeal from the disqualification order.

## C.   *Calone*

On September 26, 2005, Machado, represented by Freidberg, sued Calone for breach of fiduciary duty and related malpractice claims, *based on the same alleged "bribe" from Atherton to Calone* alleged in the *Woodward* cross-complaint. (*Machado v. Calone* (Super. Ct. San Joaquin County, 2006, No. CV027597).)

The complaint alleges the action is "partially related" to *Woodward.* (See Cal. Rules of Court, former rule 804 [counsel must give notice of related case].) It alleges the malpractice claims could be litigated in *Calone* without affecting *Woodward* and the delay caused *to the Woodward case* by consolidation would harm the marketability of Machado's property.

The complaint pleads Doe defendants and alleges "each defendant acted as the agent, employee, alter-ego, privy, conspirator and aider and abettor of each and every other defendant" and are jointly and severally liable. The complaint alleges that "Unbeknownst to the Machados . . . while Calone was negotiating the terms and conditions of the sale of the property on behalf of the Machados, *Calone was secretly conspiring with the Athertons and possibly other Doe defendants* to deceive and defraud the Machados into selling the property to the Athertons upon terms and conditions that are grossly unconscionable and outrageously onerous to the Machados." (Italics added.)

Thus, although Atherton is not a named defendant, the complaint names him as Calone's coconspirator.

Atherton moved to disqualify Freidberg, alleging *Calone* was a bald attempt to avoid the *Woodward* disqualification order. He also raised the same reasons for disqualification as he had raised in *Woodward*, namely, Freidberg's legal representation in *Brocchini*, Freidberg's knowledge of Atherton's business practices, and the ensuing land partnership.

In opposition Machado argued Atherton lacked standing and argued the motion lacked merit, reiterating the points tendered in opposition to the *Woodward* motion.

In reply Atherton emphasized the view that *Calone* was an attempt to "circumvent this Court's prior disqualification order by filing a new, separate

action that identifies [Freidberg's] former clients by name as unindicted conspirators."

At the hearing, Machado's counsel argued that although Atherton *suspects* "that my firm somehow may surreptitiously try to depose Mr. Atherton . . . which would be inconsistent with this Court's prior order in the other action," naming Atherton as a conspirator was just an "allegation." The trial court pierced this rhetoric: "Well, pleadings would give rise to that suspicion. You're saying that . . . Atherton conspired with Calone concerning this land deal." Machado's counsel then argued the motion *was premature* and should be denied unless discovery probed into matters foreclosed by the trial court's prior order; he also argued Atherton was "at best, a percipient witness to things" and is only connected to the case by "a word or two in a Complaint."

Judge Saiers granted the motion to disqualify Freidberg and on March 22, 2006 Machado filed an appeal. (*Machado v. Calone*, No. C052227.) On April 21, 2006, Machado filed this writ petition. On June 6, 2006, we issued an alternative writ and stayed the proceedings pending resolution of this petition.

## STANDARD OF REVIEW

A trial court has discretion when ruling on a motion to disqualify counsel, but such discretion must be exercised according to the relevant law. When the trial court resolves factual disputes in ruling on the motion, such findings are reviewed for substantial evidence; where the facts are undisputed, whether to order disqualification is a legal question. (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143–1144 [86 Cal.Rptr.2d 816, 980 P.2d 371].)

## DISCUSSION

### I.  Standing

We conclude Atherton, although not a named defendant in *Calone*, may move to disqualify Machado's attorney.

■  A leading treatise states: "A motion to disqualify conflicted counsel cannot be brought where there is no pending litigation or the person seeking

the disqualification (whose interests are adversely affected) is not a party to the litigation. In this situation, a separate lawsuit to enjoin the representation is generally appropriate." (Vapnek et al., Cal. Practice Guide: Professional Responsibility (The Rutter Group 2005) Conflicts of Interest, ¶ 4:318, p. 4-100 (Vapnek).)

■ In support the treatise cites two cases, neither of which directly supports the quoted proposition. The first case, *Wutchumna Water Co. v. Bailey* (1932) 216 Cal. 564 [15 P.2d 505], held that a water company was entitled to an order preventing an attorney from representing competing water claimants, where the attorney had represented the company for many years, including in matters involving the same water rights. (*Id.* at pp. 567–568.) The case illustrates the *availability* of an injunctive action but it does not hold that no alternatives exist. Cases are not authority for propositions not decided. (*Hart v. Burnett* (1860) 15 Cal. 530, 598 (*Hart*).) Further, the client was a named party and could have raised the issue in the underlying case. (See *Weidekind v. Water Co.* (1887) 74 Cal. 386, 388–389 [19 P. 173] (*Weidekind*).) The second case, *Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft* (1999) 69 Cal.App.4th 223 [81 Cal.Rptr.2d 425], upheld an injunction barring representation. It does not directly support the proposition for which it is cited. (See *Hart, supra,* 15 Cal. at p. 598.)

Although the authority cited is not directly on point, in general we agree that an aggrieved nonparty who asserts that an attorney has undertaken adverse representation should file a collateral injunctive suit to end the conflicted representation.

But here, as Atherton argued and the trial court surmised, *Calone* was filed *to evade the prior disqualification order.* In addition to the suspicious timing, the normal procedure would have been to name Calone as a cross-defendant in *Woodward*; the only apparent advantage in filing a separate suit with overlapping liability allegations would be to evade the prior order. Even the complaint concedes *Woodward* and *Calone* are "partially related," although that substantially understates the connection between the cases. Because Atherton is a named conspirator, and all Doe defendants are alleged to be the agents and alter egos of all others, Atherton only remains a nonparty at the whim of the pleader. Given the alter ego and conspiracy allegations, it would uphold the sheerest fiction to conclude Atherton lacks standing, or in Machado's astonishing words, to say that he is "a stranger" to the *Calone* suit.

Machado's proposal is that Atherton should wait to see if he is ever named as a defendant in *Calone* or at least to await the outcome of discovery and *then* move to disqualify Freidberg. This would give Freidberg control over

the issue and allow him to gain whatever advantage he perceives by evading the disqualification order. (See *Meehan v. Hopps* (1955) 45 Cal.2d 213, 218 [288 P.2d 267] *(Meehan)* ["the damage to him which he now properly seeks to avoid would have been done"].) Given the allegations of this lawsuit and the circumstances in which it was filed, to conclude Atherton lacked standing would allow Freidberg to play fast and loose with the courts. The trial court properly allowed Atherton to move to disqualify Freidberg.

## II. Merits

■ We find the *Woodward* disqualification order is final and it precludes relitigation of the issue it decided, namely, that Freidberg's prior legal and business relationships with Atherton call for his disqualification in the Machado-Atherton dispute.

### A. *Finality of the* Woodward *Disqualification Order*

■ An order granting or denying a disqualification motion is an appealable order. *(Meehan, supra,* 45 Cal.2d at p. 215; see *Reed v. Superior Court* (2001) 92 Cal.App.4th 448, 452–453 [111 Cal.Rptr.2d 842] *(Reed); Ponce-Bran v. Trustees of Cal. State University* (1996) 48 Cal.App.4th 1656, 1661, fn. 3 [56 Cal.Rptr.2d 358] *(Ponce-Bran).)*

■ The California Supreme Court has given two reasons why such an order is appealable: First, it is an injunctive order (see Code Civ. Proc., § 904.1, subd. (a)(6)); second, it is a final order collateral to the main action. *(Meehan, supra,* 45 Cal.2d at pp. 215–217.) The second ground has been questioned because it seems to conflict with authority limiting those collateral orders that may be appealed. The general rule is that only those collateral orders which compel the payment of money or the doing of some act are appealable. *(Sjoberg v. Hastorf* (1948) 33 Cal.2d 116, 119 [199 P.2d 668] *(Sjoberg)* ["It is not sufficient that the order determine finally for the purposes of further proceedings in the trial court some distinct issue in the case; it must direct the payment of money by appellant or the performance of an act by or against him"]; see *Conservatorship of Rich* (1996) 46 Cal.App.4th 1233, 1237 [54 Cal.Rptr.2d 459]; *Reed, supra,* 92 Cal.App.4th at p. 453 & fn. 2; *Truck Ins. Exchange v. Fireman's Fund Ins. Co.* (1992) 6 Cal.App.4th 1050, 1052–1053 [8 Cal.Rptr.2d 228] *(Truck).)*

*Granting* a disqualification motion compels the party to hire a new attorney, an act which satisfies the *Sjoberg* test. (E.g., *Reich v. Club Universe* (1981) 125 Cal.App.3d 965, 967 [178 Cal.Rptr. 473] *(Reich)* [order "required the named plaintiff . . . to substitute another attorney for the class"].) It does not appear that *Meehan, supra,* 45 Cal.2d 213, considered a case where the

motion was *denied*: "A careful reading of the *Meehan* decision convinces us that as to the second ground upon which the court found appealability, it was concerned only with the question of collaterality and finality. The briefs of both parties in *Meehan* cited *Sjoberg* v. *Hastorf, supra*, and there is nothing in the opinion in *Meehan* indicating an intent to delimit or overrule *Sjoberg* and its own decisions cited in *Sjoberg* to the effect that not only must the order of a collateral issue be final to be appealable, but that it must also direct the payment of money by appellant or the performance of an act by or against him." (*Efron v. Kalmanovitz* (1960) 185 Cal.App.2d 149, 156 [8 Cal.Rptr. 107].)

But at least as to an order granting disqualification, *such as the order in the instant case, Sjoberg, supra*, 33 Cal.2d 116 and *Meehan, supra*, 45 Cal.2d 213 are in harmony. Further, the first ground of *Meehan* has not been questioned, and in any event *Meehan* is binding authority. (See *Ponce-Bran, supra*, 48 Cal.App.4th at p. 1661, fn. 3; *Truck, supra*, 6 Cal.App.4th at pp. 1052–1053 & fn. 1.)

*Haldane v. Haldane* (1963) 216 Cal.App.2d 12 [30 Cal.Rptr. 793], appears to hold otherwise. It involved a notice of appeal from an order denying summary judgment and " 'from interim adverse orders . . . denying [appellant's] motion to disqualify and discipline [respondent's] attorneys on stated grounds.' " (*Id.* at p. 13.) The basis for the motion was not conflicted representation, but purported breaches of ethical standards. The court held: "The appeal must be dismissed for want of jurisdiction for none of the orders mentioned in the notice of appeal is an appealable order. As to an order denying a motion for summary judgment, see [citation]. Appellant himself characterizes the other orders . . . as 'interim adverse orders' and such they are. Neither of them is mentioned in [the predecessor to Code of Civil Procedure section 904.1], as appealable nor does either one possess the characteristic of finality which would classify it as a final judgment. Being intermediate and nonappealable such orders are reviewable upon appeal from the final judgment in the action; whether one has been entered the present record does not disclose." (216 Cal.App.2d at pp. 13–14, fn. omitted.)

*Haldane* thus turned on the party's characterization of the orders in question. More importantly, *Haldane* does not cite *Meehan*, which we are bound to follow. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]; see *Truck, supra*, 6 Cal.App.4th at p. 1053.) *Meehan* states the point clearly: "The plaintiffs next contend that the appropriate review procedure is by an appeal from the final judgment on the merits of the case . . . [citations]. The plaintiffs argue that these cases establish the right to test the order on appeal from the judgment and therefore exclude the appeal before final judgment on the merits under [the predecessor

to Code of Civil Procedure section 906]. That section provides that on appeal from a final judgment the reviewing court is not authorized to '. . . review any decision or order from which an appeal might have been taken.' To the extent that the cases above cited are relevant to the matter now before us, they seem to contain an implicit ruling that an order denying the defendants' motion to disqualify and restrain counsel is not appealable. However, in none of those cases is it apparent that the question of appealability was put in issue or considered by the court. Furthermore, if Hopps must wait for a determination on appeal from the judgments of his right to exclude the attorneys from disclosing information they had formerly obtained, the damage to him which he now properly seeks to avoid would have been done." (*Meehan, supra,* 45 Cal.2d at pp. 217–218.)

*Meehan* thus applies the long standing rule that where an order is appealable, it is not also reviewable on appeal from the final judgment: Any other conclusion would allow two appeals raising the same question. (Code Civ. Proc., § 906; see *In re Marriage of Weiss* (1996) 42 Cal.App.4th 106, 119 [49 Cal.Rptr.2d 339]; *Berge v. International Harvester Co.* (1983) 142 Cal.App.3d 152, 158 & fn. 1 [190 Cal.Rptr. 815]; 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 17, p. 78 ["Of course, an *appealable* order from which no appeal was taken cannot be reviewed on an appeal from the final judgment."].)

We are aware that in some cases courts reviewing final judgments have considered whether the *denial* of disqualification or presence of a conflict rendered the proceedings fundamentally unfair. (See, e.g., *Weidekind, supra,* 74 Cal. at pp. 388–389 [appellant objected at trial to his former attorney *in the same case* representing the other side; reversed]; *Hammett v. McIntyre* (1952) 114 Cal.App.2d 148, 157–158 [249 P.2d 885] [conflict meant attorney effectively abandoned one client in favor of another, rendering the trial unfair].) Some of those cases were mentioned and rejected in *Meehan* and others do not address the question resolved therein, therefore they do not appear to be good authority even as to denied motions. Further, they do not change the conclusion, as to *granted* motions, that the failure to appeal results in a final order not reviewable on appeal from the subsequent judgment. (*Meehan, supra,* 45 Cal.2d 213.)

Machado relies heavily on *In re Sophia B.* (1988) 203 Cal.App.3d 1436 [250 Cal.Rptr. 802] (*Sophia B.*). There, a mother appealed from an order terminating her parental rights and sought reversal based on the *denial* of her motion to disqualify county counsel, whose office represented the mother's guardian and the petitioner in the dependency action. The appellate court considered what *standard of error* to apply:

"We are initially confronted with the question of what standard of review to apply to such an appeal. More specifically, where a party does not seek pretrial review of an order refusing to disqualify opposing counsel and raises the issue only on appeal from the final judgment in the action, is that party obligated to demonstrate that the denial of the motion in some way affected the outcome of the case? We conclude such a showing is required.

". . . Prior cases raising similar issues have generally been decided on petitions for writ of mandate [citations] or on appeal following the granting or denying of an injunction to prevent an attorney from continuing to represent his or her client [citations]. We are unaware of any case—and the parties have cited us to none—in which a trial court's ruling on a motion to disqualify counsel was considered on appeal following a final judgment.

"The reason, we believe, is obvious. It is a fundamental principle of appellate jurisprudence in this state that a judgment will not be reversed unless it can be shown that a trial court error in the case affected the result. . . . We therefore infer a rule that on appeal from a final judgment, an issue of attorney disqualification may not be raised unless it is accompanied by a showing that the erroneous granting or denying of a motion to disqualify affected the outcome of the proceeding to the prejudice of the complaining party." (*Sophia B., supra,* 203 Cal.App.3d at p. 1439, citations omitted.)

The *holding,* that prejudice must be shown, seems innocuous, but to the extent *Sophia B., supra,* 203 Cal.App.3d 1436 can be read as authority for the proposition that the issue of disqualification is reviewable on appeal from a final judgment, we decline to follow it. First, the court did not cite *Meehan* and did not analyze the question of reviewability and therefore is not authority for the proposition. (*Hart, supra,* 15 Cal. at p. 598.) Second, the correct reason why the parties and the court in *Sophia B.* were unable to find cases involving such rulings on appeal from final judgments is that orders granting or denying such motions *are not reviewable on appeal from final judgments,* as we have just explained. Some authorities have accepted *Sophia B.,* also without analyzing reviewability and therefore they, too, are not persuasive. (See 1 Witkin, *supra,* Attorneys, § 134; Vapnek, *supra,* ¶ 4:332; see also *Pour Le Bebe, Inc. v. Guess? Inc.* (2003) 112 Cal.App.4th 810, 837 [5 Cal.Rptr. 3d 442] [appellant failed to show arbitral panel's denial of disqualification caused prejudice, citing *Sophia B.* by analogy with approval].)

Machado also discusses cases holding that issues decided in a ruling on some kinds of injunctive relief may be examined on appeal from the judgment. These cases do not involve disqualification orders and are inapposite. (E.g., *Art Movers, Inc. v. Ni West, Inc.* (1992) 3 Cal.App.4th 640, 646–647 [4 Cal.Rptr.2d 689] [*denial* of permanent injunction reviewable on appeal from judgment].)

Because the order in *Woodward* could have been appealed, it is not *reviewable* if an appeal is taken from the eventual judgment in *Woodward*. It is a final order for purposes of issue preclusion. (See *Sabek, Inc. v. Engelhard Corp.* (1998) 65 Cal.App.4th 992, 997–998 [76 Cal.Rptr.2d 882]; 7 Witkin, *supra*, Judgment, § 312; 50 C.J.S. (2006) Judgments, § 790.)

## B. *Issue Preclusion*

■ Issue preclusion (collateral estoppel) applies when: "First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 [272 Cal.Rptr. 767, 795 P.2d 1223].)

All of these requirements are present in this case. Machado is the party against whom preclusion is sought, whether Freidberg could represent him against Atherton was actually litigated in *Woodward*, and the issue was decided against Machado in a final order on the merits.

In *Reich, supra*, 125 Cal.App.3d 965, Reich had represented his wife and a purported class of passengers who had suffered by the actions of an allegedly inept cruise ship. Judge Thomas disqualified Reich because he "was an important percipient witness" and therefore could not represent the class; no appeal was taken from that order. (*Id.* at pp. 967–968.) Reich sued again, naming himself as a class representative. A different judge disqualified Reich, concluding that " 'To allow Mr. Reich to appear as counsel in this action for the purported class would allow him to do the very things that Judge Thomas said he could not do in the preceding action. . . .' " (*Id.* at p. 968.)

On appeal, the court held: "In the prior case there was a determination upon the trial court's resolution of conflicting evidence, that appellant was disqualified . . . . [T]he orders in the prior case were appealable. They were not appealed, and they became final. Consequently the order of disqualification is binding on appellant, and the merits of that ruling may not be relitigated . . . ." (*Reich, supra*, 125 Cal.App.3d at p. 969.)

In *A.I. Credit Corp., Inc. v. Aguilar & Sebastinelli* (2003) 113 Cal.App.4th 1072 [6 Cal.Rptr.3d 813] (*AICCI*) AICCI sued the attorney Aguilar, who had represented AICCI in an action to collect a judgment against Peterson, Aguilar's former client. The trial court disqualified Aguilar. (*Id.* at

pp. 1074–1075.) AICCI hired a new lawyer who settled the collection action. Aguilar asserted a right to fees and AICCI sought a declaration that it owed Aguilar nothing, due to the conflict. Aguilar appealed after AICCI obtained a favorable judgment. (*Id.* at p. 1076.) The court rejected the claim that Aguilar could challenge the finding that a conflict of interest existed: "Aguilar's argument is riddled with errors. First, Aguilar did not appeal the disqualification order, and consequently cannot argue now that there was no evidence that an ethical violation occurred. 'An order disqualifying an attorney from continuing to represent a party in a case has been held directly appealable.' [Citation.] 'Consequently the order of disqualification is binding on appellant, and the merits of that ruling may not be relitigated in the instant case.' [Citation.] [¶] . . . [¶] . . . An order disqualifying an attorney, which was not appealed, has collateral estoppel effect in a subsequent action involving the same issue." (113 Cal.App.4th at pp. 1077–1078, fn. omitted, citing *Reich*, *supra*, 125 Cal.App.3d at pp. 970–971.)

Machado asserts the Athertons are "percipient witnesses . . . and not culpable parties" in *Calone* and "The rights and duties in each of the actions are wholly distinct."

We disagree with Machado. As Atherton points out:

"In both cases Freidberg drafted and filed pleadings alleging that [Atherton] had conspired with and bribed Calone to defraud the Machados in relation to the purchase and sale of the same piece of real property. . . . [¶] . . . [¶]

"In determining whether to disqualify Freidberg in [*Woodward*] the parties fully briefed and argued and the trial court fully adjudicated the issue of whether Freidberg's representation of Atherton in [*Brocchini*] was 'substantially related' to the current dispute which centers around allegations that Atherton bribed and conspired with Calone to defraud the Machados in relation to the purchase of certain real property."

As to the propriety of Freidberg's participation, *Woodward* and *Calone* raised the same issue, viz., whether Freidberg can represent Machado against Atherton in the instant real property transaction dispute. The trial court answered that question in *Woodward* in a final order and therefore Freidberg is precluded from litigating the same issue in *Calone*.

## DISPOSITION

The petition is denied. The stay previously issued is vacated upon finality of this decision. Freidberg shall pay Atherton's costs of this proceeding.

Davis, Acting P. J., and Nicholson, J., concurred.

On April 17, 2007, the opinion was modified to read as printed above.