Filed 2/24/22  Preovolos v. Preovolos CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| PETER PREOVOLOS, | D078796 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2020-00040896-CU-PN-CTL) |
| ATHANASIOS K. PREOVOLOS et al. | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of San Diego County, Timothy B. Taylor, Judge.  Motion to dismiss denied; order reversed.

Nemecek & Cole, Michael McCarthy, Mark Shaeffer and Vikram Sohal for Defendants and Appellants.

Caietti Law Group, Robert M. Caietti, Kristin Alysse Kameen and Gregory Edward Catangay; Horvitz & Levy, Jeremy Brooks Rosen and Eric Samuel Boorstin for Plaintiff and Respondent.

Plaintiff and respondent Peter Preovolos,[1] sued defendants and appellants Athanasios (Thanasi) Preovolos and his law firm Preovolos Lewin ALC (Preovolos Lewin), for malpractice and breach of fiduciary duty for Thanasi's alleged conduct in, among other things, failing to disclose conflicts of interest and taking actions harming Peter while simultaneously representing him. Thereafter, Peter applied ex parte for a temporary restraining order, asserting in part that Thanasi in his capacity as corporate counsel to certain family businesses endeavored to oust Peter from board positions and withhold income from him. The trial court in the malpractice action issued an order that enjoins Thanasi and Preovolos Lewin from "providing legal assistance, legal counsel, legal representation, or legal advice to anyone adverse to [Peter] in and out of court."

Thanasi contends: (1) the order is unconstitutionally vague and overbroad; (2) the order significantly changed the status quo rather than preserved it; (3) the court lacked subject matter jurisdiction to grant the order; (4) the order adversely impacted the rights of individuals and entities over which the court had no personal jurisdiction; and (5) Peter did not satisfy the basic requirements for injunctive relief, in part because the order constitutes an invalid prior restraint. Peter has filed a motion to dismiss this appeal and the related appeal in Peter's probate action. We deny the motion

---

[1]     We refer to the parties by their first names for clarity, not out of disrespect. Thanasi separately appeals from an order disqualifying Preovolos Lewin from representing him in a probate action filed by Peter in September 2020. We granted Peter's unopposed motion to augment the record on appeal with documents that were before the trial court when it issued the temporary restraining order. Some of these documents were filed in support of and opposition to Peter's request to disqualify Preovolos Lewin and include the verified probate court petition filed by Peter as well as the probate court's disqualification order.

2

to dismiss. The temporary restraining order here is an overly broad "obey the law"-type directive for ethical rules of conduct. It is also unreasonably vague. We reverse.

FACTUAL AND PROCEDURAL BACKGROUND

We briefly summarize the circumstances leading up to the trial court's issuance of the temporary restraining order from declarations and other documents submitted with Peter's ex parte application.

For many years, Peter individually and jointly with his then-wife Litsa used the legal services of their attorney son Thanasi and his law firm, now known as Preovolos Lewin. Thanasi assisted in estate planning, property transactions, and preparing Peter's personal income taxes. Thanasi is counsel for PenChecks, Inc. (PenChecks) a business Peter founded and of which Peter was chief executive officer, and Alpha & Omega Financial Management Consultants, Inc. (Alpha & Omega), of which Peter was president.

After marital disputes arose between Peter and Litsa, they retained Preovolos Lewin in 2014 to assist them in mediating the issues and possibly file a dissolution action. Thanasi drafted an irrevocable trust into which all of Peter and Litsa's assets would be placed as well as a postmarital agreement that was intended to serve as an "economic sanction" on Peter. Thanasi was to serve as the "trust protector" of the irrevocable trust. In 2019, Thanasi drafted a restatement of the family trust, also naming Thanasi as the "trust protector" and had Peter sign a durable power of attorney naming Thanasi and Thanasi's brother Spiro as agents.

In early 2020, Thanasi blocked Peter's attempt to purchase property adjoining a storage facility that Peter had earlier purchased with separate property funds, telling the seller that Peter had no authority to enter into the

3

discussions. Peter then learned he had lost his controlling interest in the property; the storage facility had been placed into another entity and half of his interest transferred to his three sons. When Peter began exploring a possible sale of PenChecks, Thanasi threatened that Peter would be removed from the company. The PenChecks board ultimately voted to force Peter's retirement in June 2020 after Thanasi recommended that action be taken.

In July 2020, Litsa filed for dissolution of her and Peter's marriage. Several months later, Peter petitioned in the probate court to set aside the irrevocable trust and postmarital agreement, and sought damages for fraud, breach of fiduciary duty and financial elder abuse against Litsa, Thanasi and his other sons.

In early November 2020, Thanasi and Preovolos Lewin as counsel for Alpha & Omega accused Peter of misappropriating funds, embezzlement, conversion, and self-dealing, stating Peter had breached his fiduciary duties of loyalty and care by making a corporate check payable to himself and depositing it into a personal bank account. Thanasi demanded Peter return the funds and threatened to sue Peter on Alpha & Omega's behalf if he did not do so.

Days later, Peter filed this action against Thanasi and Preovolos Lewin for legal malpractice, breach of fiduciary duty and other relief. He alleged he brought the action to "redress the harm suffered by Peter following [Thanasi and Preovolos Lewin's] systematic abuse of their position of trust as Peter's attorney, which position . . . Thanasi used to systematically divert Peter's assets into a trust which Thanasi controls (and is a primary beneficiary of), while simultaneously removing Peter's authority to control his assets and companies . . . ." He alleged: "In the past 18 months, while still purportedly serving as Peter's counsel, [Thanasi and Preovolos Lewin] worked with Litsa

4

and . . . Thanasi's brother Spiro to oust Peter from his role as CEO of the company he founded and ran for the last 40 years, and have now threatened to sue Peter, their purported client, on behalf of Litsa and the business which Peter jointly owns with Litsa."

Peter alleged reasonably careful counsel would have disclosed and advised him of the unwaivable conflict of interest in the joint representation of him and Litsa; advised whether he could or should have waived the conflict; ensured any such waiver was obtained with informed consent; advised him to seek advice from separate counsel; advised him of his community and separate property interests in the property transmuted to the irrevocable trust; and advised him of the impacts of the postmarital agreement, irrevocable trust, and a confidential statement of facts that allegedly formed the basis for those documents. He alleged reasonably competent attorneys would have encouraged him to obtain independent counsel. Peter alleged further conflicts arose from Thanasi and Preovolos Lewin's concurrent representation of Alpha & Omega, the positions they had taken in Litsa's favor, their accusations of misconduct, and their threats of litigation against him. He alleged competent counsel would have identified the conflicts and advised Alpha & Omega to obtain independent counsel.

Peter alleged he suffered damages from the loss of his separate property and ownership rights; loss of control over his separate and community property as well as his estate plan; transmutation of his separate property to community property; loss of distributions, salary, and income from the businesses; and from incurring attorney fees in seeking to set aside the postmarital agreement and irrevocable trust.

After Peter filed the malpractice action, the PenChecks board held its November 2020 meeting and considered Peter's proposed retirement package,

5

which Peter and his counsel had negotiated with a special board committee. Thanasi, who was present as corporate counsel, and Litsa and Spiro in their capacity as board members, declined to recuse themselves from the meeting. The board disapproved the negotiated package, but later gave Peter a new proposal in part requiring him to dismiss his actions and abandon other rights such as his right to income from businesses including Alpha & Omega.

In January 2020, Peter moved in the probate court to disqualify Thanasi and Preovolos Lewin from representing Thanasi in that action. On February 10, 2021, the probate court issued its order disqualifying Preovolos Lewin from representing Thanasi in the probate matter.

On February 19, 2021, Peter attended another PenCheck's board meeting. Thanasi was present as PenChecks's general counsel, but denied Preovolos Lewin had a conflict of interest preventing him from acting in that capacity. Thanasi asked the board to renew his law firm's contract with PenChecks, and the board confirmed its appointment as general counsel. The board later followed Thanasi's recommendations to remove Peter as PenChecks's chairman of the board, deny Peter's request for distribution of income to him based on PenChecks's 2020 earnings, and remove Peter as a board member of PenChecks's charitable foundation. Thereafter, Peter obtained agendas of upcoming board meetings for Alpha & Omega as well as other businesses of which Peter was a board member. Agenda items included removing Peter from the various boards, even though he remained a 50 percent shareholder of PenChecks and a 42.5 percent owner of Alpha & Omega and had similar ownership interests in the other companies.

In early March 2020, Peter applied ex parte for a temporary restraining order and order to show cause why a preliminary injunction should not issue. Peter asserted that Thanasi and Preovolos Lewin "are continuing

6

representation of multiple parties to pending actions where defendants have a conflict of interest and in non-litigated business matters adverse to" Peter. According to Peter, he needed immediate intervention because even after the probate court disqualified Preovolos Lewin in the probate court proceeding, Thanasi and Preovolos Lewin continued to take directly harmful actions—"outside the courtroom and beyond judicial scrutiny"—in the face of unwaivable conflicts of interest and in disregard of the California Rules of Professional Conduct.  Peter argued the unethical breaches of fiduciary duty aided Thanasi's personal financial interest in controlling Peter's assets and estate, as Thanasi, a beneficiary to Peter's estate, was enriched by preventing Peter from accessing or using any of his own assets.[2]  Peter argued Thanasi and Preovolos Lewin had repeatedly taken actions adverse to his interests, pointing to the documents Thanasi drafted giving Thanasi control to remove Peter as beneficiary of the trusts holding his assets, block Peter from receiving trust disbursements, and prevent the sale of trust assets until Thanasi and his brothers inherit them.  He argued Thanasi's "unethical conduct" towards him had escalated, referring to Thanasi blocking the sale of PenChecks, diverting Peter's income to an account controlled by Litsa, working with the PenChecks board to remove him as CEO, accusing him of misappropriating funds, and asking Peter to dismiss his litigation in exchange for a retirement package.  Peter argued Thanasi willfully "violated the professional rules" (some capitalization omitted) by taking various actions

---

[2]     Peter argued "[Thanasi and Preovolos Lewin's] increasingly aggressive abuse of their professional obligations is interfering with Peter's autonomy and stripping Peter of virtually all income, rendering him unable to pay his regular bills, placing him in imminent jeopardy of being unable to continue fighting for his rights, and denying him access to the wealth he has created before he is dead."

adverse to him in Thanasi's role as PenChecks's general counsel.[3]  Peter argued he would suffer permanent and irreparable harm without an injunction, and, citing *Machado v. Superior Court* (2007) 148 Cal.App.4th 875 and *Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft* (1999) 69 Cal.App.4th 223, asserted such relief was available and appropriate to prohibit an attorney from continuing a representation when the attorney has a conflict of interest.

Peter argued he was likely to prevail on the merits given Thanasi and Preovolos Lewin taking "multiple positions adverse to [him]" including in respect to the concurrent joint representation of him and Litsa, as well as Thanasi's status as a beneficiary and trust protector of the irrevocable trust. Peter asserted Thanasi and Preovolos Lewin did not advise him whether he could or should waive the conflicts, explain the repercussions of the 2014 trust and postmarital agreement, give him informed written consent to the joint and concurrent representation, or withdraw when consent to the conflict was no longer possible.  He argued Thanasi and Preovolos Lewin breached their fiduciary duties and engaged in conduct falling below the standard of care by these omissions and their failure to disclose actual conflicts to Peter and the various businesses.

Following an unreported hearing on the matter, the trial court issued the order to show cause and a temporary restraining order.  After the court

---

[3]    In a supporting declaration, Peter pointed to Thanasi's recommendations that the PenChecks board remove him from board positions and deny him income, and asserted from his experience and observation that "it is clear that Thanasi is influencing Litsa and the PenChecks Board to act in ways that are detrimental to me.  I know Thanasi and Litsa frequently communicate and Litsa has historically done what Thanasi wants."

considered and largely rejected Thanasi's ensuing request for "clarification,"[4] it modified the temporary restraining order to state in part: "[P]ending the hearing on plaintiff's application for an order to show cause for preliminary injunction, [Thanasi] and Preovolos Lewin . . . are restrained and enjoined from providing legal assistance, legal counsel, legal representation, or legal advice to anyone adverse to [Peter] . . . in and out of court." (Some capitalization omitted.) The court ordered the temporary restraining order to

---

[4]   Thanasi's request for "clarification" of the temporary restraining order's scope asked the court to enter a new order providing that the temporary restraining order did not (1) control the probate court proceedings including the automatic stay of the probate court disqualification order following Thanasi's appeal; (2) prohibit Thanasi from attending a March 19, 2021 Alpha & Omega shareholder meeting or casting his shareholder vote; (3) prohibit Thanasi from performing his corporate counsel duties for Alpha & Omega and PenChecks "that are unrelated to [Peter]"; and (4) prohibit Thanasi from communicating with his mother and brothers. Thanasi asserted "the specific irreparable harm at issue herein will be suffered" before the upcoming April 1, 2021 hearing. Treating it as a motion for reconsideration, the trial court denied Thanasi's request with the exception of modifying its order to add the word "legal" between the words "providing" and "assistance." It otherwise ruled: "The court is not persuaded there is any irreparable harm to defendants between now and the April 1 hearing. The impact of the [temporary restraining order] on the Probate case (if any) is for the Probate Court to determine." The court stated that "Alpha & Omega should have independent counsel at the March 19 shareholders meeting and the SEC inquiry. PenChecks should also have independent counsel for the tax audits. Defendants' continuing representation of these parties, in which plaintiff has ownership interests, carries all the problems of divided loyalties identified in the moving papers filed last week." The court made its modification and stated that in all other respects, the temporary restraining order "remains unchanged and in full force and effect." The court did not amend the temporary restraining order to include its recommendation that the family businesses retain independent counsel for various meetings, inquiries and audits.

9

expire on April 1, 2021, unless extended, but later stayed the order pending appeal.

Thanasi filed this appeal. The parties do not dispute that the order is directly appealable. (Code Civ. Proc., § 904.1, subd. (a)(6) [appeal may be taken from "an order granting . . . an injunction"]; *Courtesy Temporary Service, Inc. v. Camacho* (1990) 222 Cal.App.3d 1278, 1286; *Luitwieler v. Superior Court of Cal. in and for Los Angeles County* (1921) 54 Cal.App. 528, 530 [statute makes no distinction between temporary and permanent injunctions].)[5]

## DISCUSSION

### I. *Motion to Dismiss Appeal*

As Peter did in the accompanying appeal, he moves to dismiss this appeal on grounds it is frivolous or taken solely for delay. He claims Thanasi's four main points raised in opposition to Peter's application are "completely without merit" and thus there is no reasonable argument the trial court abused its discretion in entering the temporary restraining order.

We deny the motion to dismiss. In purporting to recount Thanasi's assertedly frivolous arguments, Peter does not address Thanasi's *appellate* contentions, and in particular Thanasi's arguments that the temporary restraining order is unconstitutionally vague and overbroad or the court lacked subject matter jurisdiction to impose it. Peter's assertion that Thanasi's arguments *in the trial court* were frivolous or unreasonable does not make the necessary showing: that Thanasi's *appeal* indisputably has no

---

[5] Following the filing of this appeal, the trial court ruled it lacked jurisdiction to proceed on Peter's request for a preliminary injunction. Thereafter, Thanasi and Preovolos Lewin filed an amended notice of appeal including the court's later orders on the request for clarification and its jurisdictional order.

10

merit.  (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.)  And even if that were not the case, we must examine Thanasi's arguments to assess Peter's motion.  (See *People ex rel. Lockyer v. Brar* (2004) 115 Cal.App.4th 1315, 1318.)

II.  *Legal Principles and Appellate Review of Injunctive Relief*

We apply strict review in this matter for two reasons: the trial court's injunction was mandatory, and it was entered on an ex parte basis.  "An order disqualifying an attorney from continuing to represent a party . . . is a mandatory injunction because it requires affirmative acts that upset the status quo at the time the disqualification motion was filed."  (*URS Corp. v. Atkinson/Walsh Joint Venture* (2017) 15 Cal.App.5th 872, 886; see *Machado v. Superior Court, supra*, 148 Cal.App.4th at p. 882 [disqualification order is an injunctive order].)  Mandatory injunctions are rarely granted, and are " ' "subject to stricter review on appeal." [Citation.]  As our Supreme Court noted many years ago, "[t]he granting of a mandatory injunction pending the trial, and before the rights of the parties in the subject matter which the injunction is designed to affect have been definitely ascertained by the chancellor, is not permitted except in extreme cases where the right thereto is clearly established and it appears that irreparable injury will flow from its refusal." ' "  (*Davenport v. Blue Cross of California* (1997) 52 Cal.App.4th 435, 446; *Itv Gurney Holding v. Gurney* (2017) 18 Cal.App.5th 22, 29.)

The underlying legal principles do not differ between mandatory and prohibitory injunctions.  (*Ryland Mews Homeowners Assn. v. Munoz* (2015) 234 Cal.App.4th 705, 712, fn. 4.)  In determining whether to issue an injunction, the trial court considers two interrelated factors: the likelihood that the plaintiff will prevail on the merits at trial, and whether the harm the plaintiff is likely to sustain if the injunction is denied outweighs the harm the

11

defendant will suffer if the court grants the request. (*Butt v. State of California* (1992) 4 Cal.4th 668, 677-678; *King v. Meese* (1987) 43 Cal.3d 1217, 1226; *Midway Venture LLC v. County of San Diego* (2021) 60 Cal.App.5th 58, 76; *Evans v. Evans* (2008) 162 Cal.App.4th 1157, 1166.) "[I]njunctive relief lies only to prevent threatened injury and has no application to wrongs that have been completed. [Citation.] It should neither serve as punishment for past acts, nor be exercised in the absence of any evidence establishing the reasonable probability the acts will be repeated in the future. . . . '[T]o authorize the issuance of an injunction, it must appear with reasonable certainty that the wrongful acts will be continued or repeated.' " (*Scripps Health v. Marin* (1999) 72 Cal.App.4th 324, 332-333.) " '*The ultimate goal* of any test to be used in deciding whether [an injunction] should issue *is to minimize the harm which an erroneous interim decision may cause.*' " (*White v. Davis* (2003) 30 Cal.4th 528, 554.) The court's decision is not a final adjudication of the ultimate rights in controversy. (*Midway Venture LLC*, at p. 77.)

The abuse of discretion standard governs whether the lower court properly examined these factors. (*Midway Venture LLC v. County of San Diego, supra,* 60 Cal.App.5th at p. 76; *Evans v. Evans, supra,* 162 Cal.App.4th at p. 1166.) "To the extent the analysis depends on a determination of the constitutionality of the injunction, we independently review the question whether the trial court correctly interpreted and applied the applicable constitutional principles. [Citation.] Facts relevant to the constitutional analysis must be reviewed de novo, independent of the trial court's findings." (*Evans,* at p. 1166; see also *Midway Venture,* at p. 77.) Any other specific determination underlying the decision is subject to the review standard appropriate to that determination. (*Midway Venture,* at pp. 76-77.) These

review standards apply equally to temporary injunctive relief.  (See *Biosense Webster*, *Inc. v. Superior Court* (2006) 135 Cal.App.4th 827, 834.)

The "[e]ntry of any type of injunctive relief has been described as a delicate judicial power, to be exercised with great caution.  [Citation.]  This is doubly true when granting relief on an expedited basis using an ex parte request for a temporary restraining order rather than a properly noticed preliminary injunction."  (*Newsom v. Superior Court of Sutter County* (2020) 51 Cal.App.5th 1093, 1097.)  " 'A court will not grant ex parte relief "in any but the plainest and most certain of cases." ' [Citation.]  Substantively, '[a]n applicant must make an affirmative factual showing in a declaration containing competent testimony based on personal knowledge of irreparable harm, immediate danger, or any other statutory basis for granting relief ex parte.'  [Citations.]  'A trial court should deny an ex parte application absent the requisite showing.' " (*Ibid*.)

### III.  *Peter's Claim of Forfeiture*

We begin with Peter's claim that Thanasi forfeited his "ability to challenge the [temporary restraining order]" by providing an inadequate record and also by failing to cite many of the relevant facts supporting the court's order.  Peter's contention goes too far: a party will forfeit *sufficiency of the evidence* challenges by failing to provide a fair summary of all the material evidence on a point.  (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881; see *Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 737-738.)  As to the relevant background facts Peter claims Thanasi omitted, it is not clear to us that they are disputed.  And while Peter asserts Thanasi omitted Peter's exhibits supporting his ex parte application (which Peter has now submitted via augmentation), Peter does not further explain how the absence of the documents prevents us from considering Thanasi's

13

appellate contentions. We decline to resolve the matter on forfeiture grounds, particularly where Thanasi's main claims raise questions of law turning on the scope of the temporary restraining order's language. (*People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6 [forfeiture doctrine is not absolute]; accord, *In re M.F.* (2022) 74 Cal.App.5th 86, 99, fn. 3 [declining to exercise forfeiture in light of lack of disputed facts and novel legal issues presented]; *Conservatorship of C.O.* (2021) 71 Cal.App.5th 894, 903.)

IV. *Claimed Absence of Subject Matter Jurisdiction*

Thanasi contends the trial court lacked subject matter jurisdiction to grant the temporary restraining order. Success on such a claim would mean the court was entirely without authority or power to act. (See *Kabran v. Sharp Memorial Hospital* (2017) 2 Cal.5th 330, 339.) Thanasi maintains case law—*Sheller v. Superior Court* (2008) 158 Cal.App.4th 1697 and *In re Complex Asbestos Litigation* (1991) 232 Cal.App.3d 572, as well as some out-of-state authority—establishes that a court's inherent power to disqualify an attorney "does not bestow upon a trial court the authority to control attorney conduct in matters not before that court" and does not extend to attorney disciplinary actions, which are the province of the Supreme Court and the State Bar.

Thanasi's contention is in fact a claim that the court acted *in excess of jurisdiction*, meaning the court had jurisdiction over the subject matter and the parties to the malpractice action (Peter, Thanasi, and Preovolos Lewin) in the fundamental sense, but was not authorized by law to act as it did or failed to conduct itself in a manner prescribed by law. (See *Kabran v. Sharp Memorial Hospital, supra,* 2 Cal.5th at p. 339.) The California Supreme Court in *Kabran* explained: "A lack of fundamental jurisdiction is ' " 'an entire absence of power to hear or determine the case, an absence of

14

authority over the subject matter or the parties. [Citation.] . . .' [¶] . . . [F]undamental jurisdiction cannot be conferred by waiver, estoppel, or consent. Rather, an act beyond a court's jurisdiction in the fundamental sense is null and void" ab initio. [Citation.] "Therefore, a claim based on a lack of . . . fundamental jurisdiction[ ] *may be raised for the first time on appeal.*" ' " (*Ibid*.)

" 'Even when a court has fundamental jurisdiction, however, the Constitution, a statute, or relevant case law may constrain the court to act only in a particular manner, or subject to certain limitations.' [Citation.] We have described courts that violate procedural requirements, order relief that is unauthorized by statute or common law, or otherwise 'fail to conduct [themselves] in the manner prescribed' by law as acting 'in excess of jurisdiction.' [Citation.] Because a court that acts in excess of jurisdiction still has 'jurisdiction over the subject matter and the parties in the fundamental sense' [citation], any such act is 'valid until set aside, and parties may be precluded from setting it aside by such things as waiver, estoppel, or the passage of time' [citation]." (*Kabran v. Sharp Memorial Hospital*, *supra*, 2 Cal.5th at pp. 339-340.) Issues relating to jurisdiction in its less fundamental sense may be subject to forfeiture for failing to timely raise it below. (*People v. Mower* (2002) 28 Cal.4th 457, 474, fn. 6; see *People v. Delgado* (2017) 2 Cal.5th 544, 558.)

In this case, Thanasi was compelled to respond to Peter's ex parte request on short notice, and his argument concerning the scope of the trial

15

court's inherent power to disqualify counsel was not made below.[6] Whether the temporary restraining order exceeded the trial court's inherent power under Code of Civil Procedure section 128 "to control the conduct of persons 'in any manner connected with a judicial proceeding before it' " (*In re Complex Asbestos Litigation*, *supra*, 232 Cal.App.3d at p. 600) requires examination of the underlying "circumstances of each case." (*Ibid.*) Such focus on the underlying facts would normally prevent our consideration of the question for the first time. But this and other contentions by Thanasi turn on the overbroad and vague nature of the temporary restraining order's language, as well as whether it improperly extends beyond the malpractice litigation, presenting questions of law on which we exercise de novo review. (*Midway Venture LLC v. County of San Diego*, *supra*, 60 Cal.App.5th at p. 76; *Evans v. Evans*, *supra*, 162 Cal.App.4th at p. 1166; see *In re P.O.* (2016) 246 Cal.App.4th 288, 299.) We have discretion to consider such questions on undisputed facts for the first time on appeal (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 699), and do so here.

V. *Temporary Restraining Order Is an Overbroad "Obey the Law" Mandate Untethered to the Malpractice Action*

An injunctive order "should be limited in scope to the subject of the litigation." (*City of Redlands v. County of San Bernardino* (2002) 96 Cal.App.4th 398, 415.) "In fashioning a remedy, a court should 'strive for the least disruptive remedy adequate to its legitimate task' and tailor it to the

---

[6]     In opposition to Peter's ex parte application, Thanasi argued (1) there were no grounds for Peter to seek a temporary restraining order on an ex parte basis; (2) Peter's request for injunctive relief sought to change the status quo, not preserve it; (3) Peter had not clearly established any right to a mandatory injunction; (4) the requested relief was an improper prior restraint; and (5) Peter did not satisfy the basic requirements for injunctive relief.

16

harm at issue. [Citation.] And an injunction against legitimate business activities 'should go no further than is absolutely necessary to protect the lawful rights of the parties seeking such injunction.' " (*People v. Uber Technologies*, *Inc.* (2020) 56 Cal.App.5th 266, 313.) When an injunction restrains "the commission of unlawful acts 'disassociated from those which a defendant has committed' " (*id*. at p. 316), it cannot stand. (See *ibid*.)

The temporary restraining order broadly states: "[P]ending the hearing on [Peter's] Application for an Order to Show Cause for Preliminary Injunction, [Thanasi] and Preovolos Lewin . . . are restrained and enjoined from providing legal assistance, legal counsel, legal representation, or legal advice to anyone adverse to Peter . . . in and out of court." The order is without context. It does not define or describe what it means to be "adverse to" Peter. It extends beyond the persons and business entities mentioned in Peter's malpractice complaint, on whose behalf Thanasi and Preovolos Lewin were alleged to have acted to Peter's detriment. It extends to persons or entities who may not even be clients of Thanasi or Preovolos Lewin. It is not limited even to court proceedings, but extends "out[side] of court" to nonlegal business or even non-business matters.

The injunction prohibiting Thanasi and Preovolos Lewin from taking on work for unspecified persons or entities with "adverse" interests is so broad and unspecific as to constitute an impermissible "obey the law"-type directive. In effect, it directs Thanasi and Preovolos Lewin to not violate ethical rules of conduct relating to conflicts of interest and implicating duties

17

of confidentiality and undivided loyalty.[7] "[A] court may not issue a broad injunction to simply obey the law, thereby subjecting a person to contempt proceedings for committing at any time in the future some new violation unrelated to the original allegations," though it may "restrain the person from committing similar or related unlawful activity." (*City of Redlands v. County of San Bernardino*, *supra*, 96 Cal.App.4th at p. 416; *Connerly v. Schwarzenegger* (2007) 146 Cal.App.4th 739, 752 [plaintiff "was not entitled to an injunction compelling defendants to follow the law"]; see *Cook v. Craig* (1976) 55 Cal.App.3d 773, 785-786 [petitioner's prayer to have the court command law enforcement agency to "comply with the requirements of the Administrative Procedure Act [APA] in adopting, repealing, or amending the rules and regulations of the [agency] in all future actions which may be taken" was an overly broad order to "obey all laws"; the court had no way of identifying what regulations, if any, should have been promulgated pursuant to the act and its only recourse would be to order the agency to "literally comply with the APA"].)

The temporary restraining order also preemptively disqualifies Thanasi and Preovolos Lewin from accepting clients  or performing legal work for others who are "adverse to" Peter in entirely unrelated legal or business matters.  Disqualification is a "drastic" remedy.  (*Big Lot Stores, Inc. v.*

---

7      See California Rules of Professional Conduct, rules 1.7, 1.9, eff. Nov. 1, 2018, former rule 3-310(C), (E).  Rule 1.7 provides in part:  "(a) A lawyer shall not, without informed written consent from each client and compliance with paragraph (d), represent a client if the representation is directly adverse to another client in the same or a separate matter."  Rule 1.9, subdivision (a) provides:  "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed written consent."

*Superior Court of San Diego County* (2020) 57 Cal.App.5th 773, 782.) The trial court's authority to disqualify counsel " 'derives from the power inherent in every court "[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto." ' " (*Walker v. Apple, Inc.* (2016) 4 Cal.App.5th 1098, 1106, quoting *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1145 (*SpeeDee Oil*); Code Civ. Proc., § 128, subd. (a)(5).) But "a court is limited to exercising this inherent authority only when the misconduct 'will have a continuing effect on the judicial proceedings.' [Citations.] If a court's purpose is merely 'to punish a transgression which has no substantial continuing effect on the judicial proceedings . . . , neither the court's inherent power to control its proceedings nor Code of Civil Procedure section 128 can be stretched to support the disqualification.' [Citation.] Simply stated, ' "the purpose of a disqualification must be prophylactic, not punitive." ' " (*In re Marriage of Murchison* (2016) 245 Cal.App.4th 847, 852-853; see also *City of San Diego v. Superior Court* (2018) 30 Cal.App.5th 457, 471 [" 'Disqualification is inappropriate . . . simply to punish a dereliction that will likely have no substantial continuing effect on future judicial proceedings' "]; *Sheller v. Superior Court, supra*, 158 Cal.App.4th at p. 1711; *Roush v. Seagate Technology, LLC* (2007) 150 Cal.App.4th 210, 219 [disqualification "should not be taken simply out of hypersensitivity to ethical nuances or the appearance of impropriety"].) Given this preventative purpose, " '[t]he significant question is whether there exists a genuine likelihood that the status or misconduct of the attorney in question will affect the outcome of the proceedings before the court.' " (*McDermott Will & Emery*

19

*LLP v. Superior Court* (2017) 10 Cal.App.5th 1083, 1120; *Oaks Management Corporation v. Superior Court* (2006) 145 Cal.App.4th 453, 467.)

Peter cannot make this showing. As stated, the temporary restraining order is untethered to the persons and entities involved in the malpractice action. Though the order effectively disqualifies Thanasi/Preovolos Lewin from acting as corporate counsel for PenChecks and Alpha & Omega in view of recommendations for board votes against Peter's interests (now completed acts claimed to be breaches of professional or fiduciary duties), it is apparent the trial court was also concerned about future, entirely unrelated ethical transgressions on the part of Thanasi and Preovolos Lewin. That is understandable as Peter's argument to the court was that Thanasi and Preovolos Lewin had "repeatedly ignored the Rules of Professional Conduct and taken multiple positions adverse to Peter" and their actions "ma[d]e clear they have no regard for legal ethics." But a " 'violation of a rule of the State Bar Rules of Professional Conduct does not necessarily compel disqualification.' " (*In re Marriage of Murchison*, *supra*, 245 Cal.App.4th at p. 853.) And it was not the court's role to police their ethical misconduct.

In addressing Thanasi's overbreadth challenge, Peter focuses on Thanasi's and Preovolos Lewin's free speech rights, asserting those rights are not at issue because the order "targets their *conduct*, i.e., their undertaking to provide legal services to parties adverse to Peter in violation of their ethical duties" and only "incidentally" affects speech. Peter argues that even if the order targets free speech rights, Thanasi and Preovolos Lewin's concurrent representation of him "and parties adverse to [him]" warrants disqualification even if the representations have nothing in common. He argues the broad injunction was justified for Thanasi's and Preovolos Lewin's "extensive history of flouting their ethical responsibilities . . . ."

Thanasi's overbreadth arguments are not limited to the injunction's targeting of free speech rights. And Peter's assertion that concurrent representations warranted disqualification do not acknowledge that the court's order goes well beyond Thanasi and Preovolos Lewin's asserted joint representation of Peter on the one hand, and Litsa or the family businesses on the other. That Thanasi and Preovolos Lewin may be repeatedly "flouting their ethical duties" does not warrant such a broad and unspecific injunction directing them to simply comply with those duties, as we have discussed above.

Absent context or specificity about the unrelated current or future representations, there is no way to establish a conflict of interest that would justify disqualification.[8] Peter cannot demonstrate that preventing Thanasi

---

[8] Whether a disqualifying conflict of interest exists between clients must be determined in context of the assertedly conflicting matters. When a former client seeks to have a previous attorney disqualified as to a successive, potentially adverse client, the governing test requires that the client demonstrate a substantial relationship between the subjects of the antecedent and current representations. (*Flatt v. Superior Court* (1994) 9 Cal.4th 275, 283; *Capra v. Capra* (2020) 58 Cal.App.5th 1072, 1097.) "To establish a prohibited successive relationship, plaintiffs must do more than show merely that [the attorney] previously represented them . . . on any type of matter. '[I]t is not the services performed by the attorney that determines whether disqualification is required, it is "the similarities between the legal problem involved in the former representation and the legal problem involved in the current representation." ' " (*Capra*, at pp. 1097-1098.) The California Supreme Court has also stated: "An attorney who seeks to simultaneously represent clients with directly adverse interests *in the same litigation* will be automatically disqualified." (*City and County of San Francisco v. Cobra Solutions, Inc.* (2006) 38 Cal.4th 839, 846, citing *Flatt*, at p. 284, fn. 3.) The temporary restraining order here is not limited to the litigation context, and absent specificity as to the parties Thanasi and Preovolos Lewin purport to be representing, one cannot confirm there is even simultaneous or concurrent representation.

21

and Preovolos Lewin from representing unidentified adverse parties or entities adverse to him will negatively impact the outcome of the malpractice action or have a "substantial continuing effect" on future proceedings in that case. The order went beyond the court's inherent authority to control the conduct of officers in judicial proceedings before it.

We observe that "[a] court is not powerless to act . . . in the face of . . . possible ethical violations . . . ." (*In re Marriage of Murchison, supra*, 245 Cal.App.4th at p. 853.) " 'There are other sanctions which in that situation must suffice, including imposition of attorneys['] fees and costs incurred by the other side as a result of the misconduct (Code Civ. Proc., § 128) and reporting of the misconduct to the State Bar of California so that it may determine whether disciplinary action is appropriate . . . .' " (*City of San Diego v. Superior Court, supra*, 30 Cal.App.5th at pp. 471-472.)

VI. *The Injunction Is Unreasonably Vague*

As an independent basis for the result we reach, we conclude the injunction here is also unreasonably vague. " 'An injunction must be narrowly drawn to give the party enjoined reasonable notice of what conduct is prohibited.' [Citation.] It 'must be sufficiently precise to provide a person of ordinary intelligence fair notice that her contemplated conduct is forbidden.' " (*Midway Venture LLC v. County of San Diego, supra*, 60 Cal.App.5th at p. 92; see also *People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1115; *In re Berry* (1968) 68 Cal.2d 137, 156; *People ex rel. Gascon v. HomeAdvisor, Inc.* (2020) 49 Cal.App.5th 1073, 1082 [" 'An injunction must be sufficiently definite to provide a standard of conduct for those whose activities are to be proscribed"].) To put it simply, for an injunction to be valid, the enjoined party must be able to determine what they may or may not do in order to comply. (*People v. Gordon* (1951) 105 Cal.App.2d 711, 725;

22

*City of Redlands v. County of San Bernardino*, *supra*, 96 Cal.App.4th at p. 415.)

The temporary restraining order does not meet this standard. Thanasi and Preovolos Lewin risk violating the injunction and contempt exposure for merely giving legal advice or assistance or undertaking legal representation in unspecified capacities or contexts deemed "adverse" to Peter. In a litigation scenario, it is reasonably clear when litigants are adverse. But the temporary restraining order in this case goes beyond litigation contexts (in a declaration supporting his request for clarification, Thanasi mentions his right to exercise an Alpha & Omega shareholder vote, as well as his handling of tax and Securities and Exchange Commission audits) and even beyond business contexts. The use of the term "adverse" without context makes the order "a model of overreaching and confusion." (*In re Berry*, *supra*, 68 Cal.2d at p. 156.) Because a reasonable person must necessarily guess at the injunction's meaning, it cannot form the basis for the "potent weapon" of contempt. (*Ibid*.)

Peter's arguments do not convince us otherwise. Quoting *People v. Uber Technologies, Inc.*, *supra*, 56 Cal.App.5th 266, he argues a "contextual application of otherwise unqualified legal language may supply a clue to a law's meaning, giving facially standardless language a constitutionally sufficient concreteness." But in the general context of attorney/client relationships, particularly outside a litigation scenario, one must examine the nature of the matters to give meaning to the term (see footnote 8, ante). Further, given the order's breadth, it "cannot be cured by reference to the 'context' in which it issues" and must "stand or fall on the basis of what it purports to enjoin; the fact that it literally prohibits [lawful activity] cannot be overcome by speculation that appellants subjectively understood what was

23

intended by the injunction." (*People v. Kelley* (1977) 70 Cal.App.3d 418, 422-423.) *Uber* is inapposite. The injunction there "specifically identified" the conduct sought to be restrained—continued misclassification of drivers—and the injunction was "specific to the Labor Code provisions, Unemployment Insurance Code provisions, and Wage Orders" with which the defendants had to comply. (*Id*. at p. 316.) This broad disqualification order here contains no specificity at all.

Peter further argues the word "adverse" is well within the requisite level of specificity to survive a vagueness challenge, pointing to use of the word in the Rules of Professional Conduct and by the California Supreme Court in *Flatt v. Superior Court*, *supra*, 9 Cal.4th 275 and *SpeeDee Oil*, *supra*, 20 Cal.4th 1135. He argues Thanasi's inability to understand its meaning is "tantamount to saying that [he and Preovolos Lewin] cannot understand their ethical duties as members of the Bar, and does nothing to demonstrate that the term's use in a temporary restraining order renders the order unconstitutional." However, both *Flatt* and *SpeeDee Oil* make clear that determining adversity in successive representation scenarios requires information about the subject matter of the representation, and absent a litigation context, or information about the client (or non-client) entities one cannot know whether adverse interests are implicated.

## VII. *Thanasi's Remaining Arguments*

Having concluded the temporary restraining order is overbroad and vague, we need not reach Thanasi's remaining arguments, including that the order is an unconstitutional prior restraint or that Peter did not meet the basic requirements for injunctive relief. However, because the trial court will presumably revisit the matter on Peter's request for a preliminary injunction, we point out that many of Thanasi's alleged wrongful acts are now complete

24

(preparation of the irrevocable trust or postmarital agreement, his recommendations that Peter be removed as an officer or board member of PenChecks) or they resulted in monetary loss, which is not irreparable damage.  Injunctive relief is not available to remedy such acts and harm. (*Scripps Health v. Marin, supra*, 72 Cal.App.4th at pp. 332-333; *Thayer Plymouth Center, Inc. v. Chrysler Motors Corp.* (1967) 255 Cal.App.2d 300, 306 ["if monetary damages afford adequate relief and are not extremely difficult to ascertain, an injunction cannot be granted"], limited on other grounds as stated in *GHK Associates v. Mayer Group*, *Inc.* (1990) 224 Cal.App.3d 856, 880.)

## DISPOSITION

The motion to dismiss is denied.  The order is reversed.  Appellants shall recover costs on appeal.

O'ROURKE, Acting P. J.

WE CONCUR:


IRION, J.


DATO, J.

25