Filed 4/2/26  Gallegos v. Veals CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MAUREEN HELEN GALLEGOS, | B347668 |
| Respondent, | Los Angeles County Super. Ct. No. 23WHPT00289 |
| v. | |
| PHILIP SETH VEALS, | |
| Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, A. Veronica Sauceda, Judge.  Affirmed.

Law Offices of Linda Louise Scott and Linda Louise Scott for Appellant.

Sabarwal Law and Sanjay Sabarwal for Respondent.

Philip Seth Veals appeals from an order[1] granting the motion of Maureen Helen Gallegos to disqualify Veals's counsel, Linda Louise Scott. Veals has failed to provide an adequate record. Accordingly, we find no abuse of discretion and therefore affirm the trial court's order.

## FACTS AND PROCEDURAL BACKGROUND

### 1. *The parties' separation and Gallegos's petition to establish parental relationship*

Gallegos and Veals, unmarried former partners, separated in January 2023 and Gallegos filed a Petition to Establish Parental Relationship in August of that year. Gallegos and Veals have three children. As of December 2024, the children were eight, five, and three. In December 2023, the court approved a stipulation between the parties for their respective time with the children, child support, health insurance, and attorney fees. According to the stipulation, Veals was to get "35% of the time share with the minor children."

---

[1] Gallegos contends the order at issue is "an interlocutory, non-final order" and is "not . . . appealable." Gallegos is mistaken. An order granting or denying a motion to disqualify counsel due to an alleged conflict of interest or other violation of the Rules of Professional Conduct is appealable as an injunction order. (*URS Corp. v. Atkinson/Walsh Joint Venture* (2017) 15 Cal.App.5th 872, 878–880 [order is appealable under Code of Civil Procedure section 904.1, subdivision (a)(6) as order granting or denying injunction and as final order on a collateral issue]; *Machado v. Superior Court* (2007) 148 Cal.App.4th 875, 882; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2025) ¶ 2:133.1.)

**2.** ***Gallegos's RFO for sole custody and monitored visitation***

In December 2024, Gallegos filed a request for order "for sole legal and physical custody, monitored visitation, modified child support, and attorneys fees." Gallegos raised a number of allegations about Veals's "behaviors" that, she contended, "present[ed] a serious and ongoing risk to the children's health, safety, and welfare." Gallegos stated Veals had been arrested for driving under the influence with the children in the car. She contended Veals continued to consume alcohol, allowed the children access to his phone, which contained "adult content," and failed to provide "proper sleeping arrangements" for the children, who were "resorting to couches, floors, or shared spaces with unrelated individuals." (We recite these allegations, and Veals's below, not for their truth, but as examples of the accusations each parent leveled against the other.)

In April 2025 Veals submitted a declaration in response. Veals admitted he had been arrested for driving under the influence on October 19, 2024. Veals stated he had attended the birthday party of a friend's child, he "had some beer" at the party, his car later ran out of gas, and he was arrested. Veals declared he had been "convicted of a wet reckless" and, as a result, he was attending "the required alcohol offender's educational program" as well as "Alcoholics Anonymous sessions." Veals said he'd installed an ignition interlock device on his car.

Veals declared Gallegos took their eldest daughter with her to massage the feet of "male strangers late at night in dangerous areas," while Gallegos massaged the "clients' upper extremities." He said the children were living in a one-bedroom residence with Gallegos and her "new love interest along with their newborn

3

child."  Veals alleged Gallegos allowed the children to bathe only once a week, and she sent them to school with only an orange for breakfast.

Gallegos filed a reply.  In addition to disputing Veals's "salacious, baseless accusations," Gallegos raised "serious ethical concerns" regarding Veals's counsel, Linda Louise Scott.  Gallegos stated Scott was "dating" Veals's father and had "interacted directly with the children."

Gallegos and Veals appeared before the court, with counsel, on April 25, 2025.  There is no reporter's transcript of the proceedings.  The minute order states, "The parties are sworn and testify."  The court advised counsel and the parties "that the hearsay statements contained in the parties['] declarations will not be considered."  The order states Gallegos's counsel made an oral request to continue, "represent[ing] to the Court that there may be a conflict of interest for Ms. Scott to represent [Veals] based on the personal nature of their relationship and her relationship with the minor children."

The court put the matter on second call "to allow the parties to confer regarding the request."  Veals apparently left before the court re-called the case.  The minute order notes "[n]o agreement ha[d] been reached."  The court continued the case to June 25 and issued "temporary orders":  (1) Veals was to install an interlock safety device on his car; (2) Veals was to have up to six hours a week of professionally monitored visitation with the children; and (3) Veals was to have a daily phone or video call with the two younger children "via Talking Parents."

### 3.    *Gallegos's motion to disqualify Scott*

On April 29, 2025, Gallegos filed a motion to disqualify Veals's counsel, Linda Scott.  Gallegos relied on the "Advocate-

4

Witness Rule," citing *Kennedy v. Eldridge* (2011) 201 Cal.App.4th 1197, 1209 and the Rules of Professional Conduct, rule 3.7. In a supporting declaration, Gallegos stated Scott "ha[d] been in a personal and close relationship" with Veals's father for years, and the children stayed at her home when Veals had his custody time with them. Gallegos said the children referred to Scott as " 'grandma' " and they "sometimes shar[ed] a bed with Linda Scott herself." Gallegos also alleged Scott had "firsthand knowledge of" both "the children's exposure to adult content while under [Veals's] supervision" and Veals's "drinking during his custody in violation of court orders." Gallegos noted Scott came to the scene when Veals was arrested and "personally took custody of the children." For all of these reasons, Gallegos contended, Scott was "a necessary witness," and her "unavoidable dual role as advocate and necessary witness, her significant familial relationships, and the clear potential for misuse of confidential information" required her disqualification.

Veals filed an opposition to the motion. He contended he had "waived" the Advocate-Witness Rule. Veals submitted copies of two letters—dated April 3, 2024 and April 16, 2025— from Scott to him. Scott wrote she was writing "to confirm our continuing discussions regarding any potential conflicts of interest." Scott stated, "[S]ome might argue that my close relationship with you, your father, and the rest of your family might somehow color my professional judgment and adversely impact my ability to provide you with competent representation." Scott said she saw "no difficulty with providing [Veals] with competent and diligent legal representation," and she had "no reason to believe [she] ha[d] anything to offer as testimony that will be of benefit to [Gallegos]." Veals countersigned both letters.

Veals also argued the Advocate-Witness Rule applied only to trials and "should not apply to trivial, scurrilous and inconsequential matters." Veals submitted a declaration stating Gallegos had "stayed [at Scott's home] with [the] children over the years, and she knows that they are usually generally allowed to sleep where they choose to sleep." Veals said the two older children had "a strong love and affection for [Scott], their 'Grandma,' as they call her," and they "always insist upon sleeping with her if allowed to do so." Veals declared he could not afford to get another lawyer.

Scott submitted her own declaration in support of Veals's opposition. She stated she had been "the partner of [Veals's] father for many years" and, as such, had been "actively involved in the lives of the children . . . since each of them was born." Scott described Gallegos's "claims" about the available space at Gallegos's home compared with Scott's as "actually amusing." Scott said Gallegos had "frequently cho[sen] to enjoy the hospitality [Scott] extended by staying with [her] for dozens of weekends."

Gallegos and Veals, with counsel, appeared before the court on June 17, 2025. There is no reporter's transcript of the proceedings. The minute order states, "The matter is called for hearing. [¶] The parties are sworn." After a meet and confer, the court re-called the case and then ruled. The minute order states, "The Court having fully considered the moving documents, opposition, reply declaration, and argument of counsel now rules as follows: [¶] The Court finds the Advocate-Witness rule, pursuant to Kennedy v. Eldridge, 201 14 15 [*sic*] Cal.App.4th

6

1197, 1209 (2011),[2] applies in this case. [¶] Petitioner's motion to disqualify Ms. Scott as attorney of record for Respondent is granted.  Ms. Scott has a confidential and fiduciary relationship with Respondent as well as a personal relationship with the minor children subject to this case."  The minute order stated "[t]he Trial Setting Conference and request for order" would remain on calendar for June 25.

Veals filed his notice of appeal on June 23, 2025.  We do not know what happened on June 25, 2025 or in the months since.

## DISCUSSION

**1.    Kennedy v. Eldridge *and Rules of Professional Conduct, Rule 3.7***

In the trial court, Gallegos cited—and the court relied on—*Kennedy*, *supra*, 201 Cal.App.4th 1197.  That case involved, as the appellate court put it, "a roiling support and custody dispute." (*Id.* at p. 1200.)  There, two young people had a baby.  The baby's mother, Kayla, filed a petition to establish paternity and requested custody.  Richard Eldridge, counsel for the baby's father, Tyler, was Tyler's grandfather.  Richard previously had represented Kayla's father in a divorce case.  Kayla also had worked for Richard's firm.  Kayla moved to disqualify (or "recuse") Richard from representing Tyler in the action.  Kayla contended Richard, in these earlier interactions with her and her family, had had "access to [her] confidential information." Kayla also contended Richard and his wife and law partner,

---

[2]    The correct citation is *Kennedy v. Eldridge* (2011) 201 Cal.App.4th 1197 (*Kennedy*).

7

Tyler's mother, had been " 'emotionally involved' in their new grandson's legal case."  (*Id*. at pp. 1200–1202.)

The trial court granted Kayla's motion.  The court first held Kayla had standing to bring the motion even though she had not been a client of Richard or his firm.  The court ruled, "Richard's dual role as witness and advocate compromised his ethical duty to maintain the integrity of the judicial process; and that the best interest of [the infant] required that Richard not be put in the unseemly role of advocate for his son against the child's mother in a case involving custody and support." (*Kennedy*, *supra*, 201 Cal.App.4th at p. 1202.)

The court of appeal affirmed.  The court first noted that, when no attorney-client relationship exists, mere exposure to the confidences of an adversary, standing alone, does not warrant disqualification.  (*Kennedy*, *supra*, 201 Cal.App.4th at p. 1205.) However, the court continued, " ' "disqualification is proper where, as a result of a prior representation or through improper means, there is a reasonable probability counsel has obtained information the court believes would likely be used advantageously against an adverse party during the course of the litigation." ' "  (*Ibid*., italics omitted.)  The appellate court concluded the trial court reasonably could have found "there was a significant danger that—as a result of its prior involvement in her father's divorce case—the Eldridge firm acquired relevant confidential information about Kayla to which it otherwise would not have had access."  (*Id*. at p. 1207.)

The *Kennedy* court affirmed the disqualification order on a second ground:  "the conflict posed by the almost inevitable prospect that Richard will act both as a percipient witness and an advocate in a dispute over [the infant's] care and custody."

(*Kennedy*, *supra*, 201 Cal.App.4th at p. 1208.) The court noted "[t]he 'advocate-witness rule,' which prohibits an attorney from acting both as an advocate and a witness in the same proceeding, has long been a tenet of ethics in the American legal system, and traces its roots back to Roman Law." (*Ibid*.) The court explained:

> " ' "An advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility. . . ." ' [¶] This danger looms large in the present case. Richard is the head of a household that is the subject of controversy and conflicting averments. Thus, it is a virtual certainty that his testimony as a witness in this custody/ visitation dispute will be necessary. As a witness, it is Richard's responsibility to tell the truth. As an advocate, it is his job to obtain the best result for his client. These duties may not necessarily be coextensive and where they are not, Richard may not be permitted to choose between them. The likelihood of conflict inherent in Richard's dual status is indisputable." (*Id*. at p. 1209.)

Finally, the *Kennedy* court gave a third reason for its affirmance: "[W]e find the multiple and interconnected family entanglements present here result in a strong appearance of impropriety and undermine the integrity of the judicial system." (*Kennedy*, *supra*, 201 Cal.App.4th at p. 1211.) The court queried, "Can the court countenance allowing the infant's grandfather to assume an adversarial role against the infant's mother in a dispute over the child's safety and welfare?" (*Id*. at p. 1212.)

9

The court referred to the "awkward spectacle, where the lines between attorneys, relatives and litigants become blurred and confused." (*Ibid*.)

The parties also rely on rule 3.7 of the Rules of Professional Conduct, entitled, "Lawyer as Witness." Although the rules govern attorney discipline and do not create standards for disqualification by the courts, judges often look to them for guidance in analyzing questions of disqualification. (*Kirk v. First American Title Ins. Co.* (2010) 183 Cal.App.4th 776, 792.)

Rules of Professional Conduct, rule 3.7 provides, in pertinent part,

> "(a) A lawyer shall not act as an advocate in a trial in which the lawyer is likely to be a witness unless: [¶] (1) the lawyer's testimony relates to an uncontested issue or matter; [¶] (2) the lawyer's testimony relates to the nature and value of legal services rendered in the case; or [¶] (3) the lawyer has obtained informed written consent from the client." (Fn. omitted.)

Comment [1] to rule 3.7 provides, the "rule applies to a trial before a jury, judge, administrative law judge or arbitrator. This rule does not apply to other adversarial proceedings." Comment [3] to the rule states, "Notwithstanding a client's informed written consent, courts retain discretion to take action, up to and including disqualification of a lawyer who seeks to both testify and serve as an advocate, to protect the trier of fact from being misled or the opposing party from being prejudiced."

**2.** *Standard of review*

We review an order granting or denying a disqualification motion for abuse of discretion. (*Federal Home Loan Mortgage*

10

*Corp. v. La Conchita Ranch Co.* (1998) 68 Cal.App.4th 856, 860; *Kennedy*, *supra*, 201 Cal.App.4th at p. 1203.) The trial court's ruling is presumed to be correct. (*H.F. Ahmanson & Co. v. Salomon Brothers, Inc.* (1991) 229 Cal.App.3d 1445, 1451.) We are permitted to reverse only when there is no reasonable basis for the court's decision. (*Federal Home Loan*, at p. 860.)

**3.**     ***Because Veals has failed to provide a reporter's transcript, or the equivalent, of the June 17, 2025 proceedings, we are unable to evaluate his claims of error and we therefore affirm***

"The most fundamental rule of appellate review is that the judgment or order challenged on appeal is presumed to be correct, and it is the appellant's burden to affirmatively demonstrate error." (*Argueta v. Worldwide Flight Services, Inc.* (2023) 97 Cal.App.5th 822, 833, citing *Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.) "All intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent, and error must be affirmatively shown." (*Denham v. Superior Court of Los Angeles County* (1970) 2 Cal.3d 557, 564.) This includes the presumption " 'that the record contains evidence to support every finding of fact.' " (*In re Marriage of Fink* (1979) 25 Cal.3d 877, 887.) "[T]he burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson*, at pp. 608–609; accord *Denham*, at p. 564.)

Veals has failed to provide a reporter's transcript—or a permissible substitute—of the June 17, 2025 hearing. (See Cal.

11

Rules of Court, rule 8.120(b).[3])  "Where no reporter's transcript has been provided . . . it is presumed that the unreported trial testimony would demonstrate the absence of error." (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992, citing *Ehrler v. Ehrler* (1981) 126 Cal.App.3d 147, 153–154.)  "The effect of this rule is that an appellant who attacks a judgment but supplies no reporter's transcript will be precluded from raising an argument as to the sufficiency of the evidence." (*Estate of Fain,* at p. 992, citing *Sui v. Landi* (1985) 163 Cal.App.3d 383, 385–386; *National Secretarial Service, Inc. v. Froehlick* (1989) 210 Cal.App.3d 510, 521–522.)

Because Veals has failed to comply with California Rules of Court, rule 8.120(b), we simply don't know what happened at the hearing, at the conclusion of which the court granted Gallegos's motion to disqualify Scott.  We don't know if Gallegos or Veals (or both) testified.  (The minute order says only that "[t]he parties [were] sworn.")  We don't know if the court accepted the declarations of Gallegos, Veals, and Scott, or whether any objections were made to any of those declarations, and—if so— whether the court sustained or overruled those objections.  We don't know if exhibits were marked and admitted into evidence and, if so, what they were.  (Gallegos's respondent's brief refers to a "full set of evidentiary exhibits" that "[a]ppellant did not include" in the record on appeal.)  We don't know what

---

[3]    Rule 8.120(b) provides, "If an appellant intends to raise any issue that requires consideration of the oral proceedings in the superior court, the record on appeal must include a record of these oral proceedings in the form of one of the following:  (1) A reporter's transcript under rule 8.130; (2) An agreed statement under rule 8.134; or (3) A settled statement under rule 8.137."

arguments counsel made. The minute order says the court "fully considered" the "argument of counsel." The court then made a finding that "Ms. Scott has a confidential and fiduciary relationship with Respondent as well as a personal relationship with the minor children subject to this case."

We don't know what—if anything—the court made of Veals's written waivers. It may be the court granted the motion to disqualify Scott for the same reason the *Kennedy* court listed as one of the grounds for its affirmance: that the "multiple and interconnected family entanglements present here" would result in "a strong appearance of impropriety and undermine the integrity of the judicial system." (*Kennedy*, *supra*, 201 Cal.App.4th at p. 1211.) Perhaps the trial court was concerned about the prospect of Scott—whom the children view as their "grandma"—cross-examining the mother of those young children. Without any record of the proceedings, we just have no idea.

Without any citation to the record, Veals asserts Gallegos "has no intention to call [Scott] as a witness." Veals says, "Actually, it is highly unlikely Respondent will call counsel as a witness in this case because she has nothing beneficial to offer on Respondent's behalf." Veals cites no witness list or other document including or excluding Scott as a witness.[4] Nor does Veals's assurance that Scott "has nothing beneficial to offer" on Gallegos's behalf necessarily follow.

Indeed, Scott already has chosen to serve as a witness. In support of Veals's opposition to Gallegos's disqualification

---

[4] The superior court's Case Summary shows a trial witness list for Veals was filed June 23, 2025, and a trial witness list for Gallegos was filed June 24, 2025, but the contents of those documents themselves are not part of the record on appeal.

13

motion, Scott submitted a declaration testifying to the children's sleeping arrangements when they are at her home, the size and configuration of Gallegos's home, the children's "frequent[ ] complain[ts]" about "living in such cramped quarters" at Gallegos's home, and their "very inconvenient, limited access to the single bathroom."  Scott's declaration goes on to state she had "never seen anything . . . that could be described as graphic or inappropriate" during the children's television viewing at her home, and she had never seen Veals consuming alcohol "while caring for the children."

Veals suggests that, "in order to prevent a miscarriage of justice," this court should order a reporter's transcript or "remand[ ] the matter back to trial court [*sic*] with instructions . . . for it to reassess its order."  But it is not this court's job to procure a record Veals, as the appellant, is required to provide. The Judicial Council promulgated California Rules of Court, rule 8.120(b) for a reason.  " 'It is the duty of an appellant to provide an adequate record to the court establishing error. Failure to provide an adequate record on an issue requires that the issue be resolved against appellant.' " (*Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 348.) "In numerous situations, appellate courts have refused to reach the merits of an appellant's claims because no reporter's transcript of a pertinent proceeding or a suitable substitute was provided." (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 186.)

Veals also asserts he did not have to provide a reporter's transcript or settled statement because the "error is otherwise apparent on the face of the existing record."  It is unclear what Veals means by this.  Veals says, "[T]he trial court cited several

14

patently unlawful bases to justify the issuance of its order, such as the 'confidential and fiduciary relationship' counsel has 'with Respondent.' "  As we have explained, without a record of the proceedings at the June 17 hearing, we cannot assess Veals's claims of error.  The trial court cited the advocate-witness rule as well as Scott's "personal relationship with the minor children subject to this case."  The court may have viewed the facts here as similar to those in *Kennedy*.  Or the court may have exercised its discretion under comment [3] to rule 3.7 of the Rules of Professional Conduct to disqualify Scott to protect "the opposing party [Gallegos] from being prejudiced."  We don't know, nor is it appropriate for us to try to guess.

Finally, Veals contends the trial court "seems to have completely disregarded" his claim that the disqualification of Scott would cause him "undue hardship."  But, again, without a record of the hearing, we cannot determine whether the court abused its discretion in weighing the fundamental principle of fair proceedings against a number of competing factors, including "the financial burden on a client of replacing disqualified counsel."  (See *Oaks Management Corporation v. Superior Court* (2006) 145 Cal.App.4th 453, 464–465.)

4. ***We decline to award Gallegos attorney fees on appeal or to impose sanctions on Veals***

Gallegos asks us to award her the attorney fees she "incurred in responding to this appeal."  We decline.  Gallegos may make any request she wishes for attorney fees in the trial court.  (See *In re Marriage of Joseph* (1990) 217 Cal.App.3d 1277, 1290–1291 [trial court "is in a better position to receive evidence and evaluate" conditions that must be met for a fee award on appeal]; *In re Marriage of Davis* (1983) 141 Cal.App.3d 71, 78.)

15

We also decline Gallegos's invitation to award fees "as a sanction for conduct that frustrates the policy of settlement or cooperation in litigation."  Gallegos admits she's "not explicitly moving for [Family Code] § 271 sanctions here, [but] the spirit of § 271 supports a fee shift."  Gallegos cites no authority for this novel suggestion.

## DISPOSITION

We affirm the trial court's order granting respondent Maureen Helen Gallegos's motion to disqualify counsel for appellant Philip Seth Veals.  Gallegos is entitled to costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, Acting P. J.

We concur:

ADAMS, J.

HANASONO, J.

16